**UNITED STATES of America, Appellee,**

v.

**David B. MORRISON,**
**Defendant-Appellant.**

No. 75–1161.

United States Court of Appeals,
First Circuit.

Argued Dec. 3, 1975.

Decided March 15, 1976.

---

Robert W. Harrington, Boston, Mass., with whom Judith E. Diamond and Harrington & Gormley, Boston, Mass., were on brief, for appellant.

Daniel F. Featherston, Jr., and Featherston, Homans & Griffin, Boston, Mass., on brief as amicus curiae.

Sidney M. Glazer, Atty., Dept. of Justice, Washington, D. C., with whom James N. Gabriel, U. S. Atty., and Jeremiah T. O'Sullivan, Special Atty., Dept. of Justice, Boston, Mass., were on brief, for appellee.

Before COFFIN, Chief Judge, McENTEE and CAMPBELL, Circuit Judges.

McENTEE, Circuit Judge.

After trial to a jury, appellant was convicted of conducting an illegal gambling business in violation of 18 U.S.C. § 1955. On this appeal he presents a number of claims which may be briefly summarized as follows. Appellant contends that the indictment returned by the grand jury was invalid because the United States Attorney appearing before it was not properly autho-

rized to conduct the inquiry as required by 28 U.S.C. § 515(a); that 18 U.S.C. § 1955 is unconstitutional; that the indictment failed to charge a violation of a relevant offense under state law as required by § 1955; that the trial court erred in permitting an expert witness to testify as to the daily total of wagers in the alleged gambling business; and that a judgment of acquittal should have been entered since there was insufficient evidence to support a conviction. We examine them in this order.

Appellant claims that the letter of authority from Assistant Attorney General Petersen[1] assigning Jeremiah T. O'Sullivan, an attorney in the Organized Crime and Racketeering ("Strike Force") Section of the Department of Justice to assist in the federal prosecutions in the district of Massachusetts failed to comply with the requirement of 28 U.S.C. § 515(a) (1970)[2] that any special attorney be "specifically directed" to carry out particular legal proceedings. Essentially appellant contends that § 515(a) represents Congress' desire to prevent broad roving investigations by special attorneys and that therefore the language of § 515(a) requiring specific directions to any specially appointed attorney should be strictly construed. In this claim appellant relies primarily on *United States v. Dulski,* 395 F.Supp. 1259 (E.D.Wisc.1975) and *United States v. Crispino,* 392 F.Supp. 764 (S.D.N.Y.1975). The district courts in these cases held that the letters of authority, both identical with the letter challenged here except for references to different federal districts, were too broad to meet the requirements of § 515(a) because they did not specify the particular statutes under which the proceedings were to be conducted and the reasons why a specially qualified attorney was required. Both of these cases, however, have been reversed, *United States v. Crispino,* 517 F.2d 1395 (2d Cir. 1975) (mem.); *United States v. Dulski, supra, rev'd sub nom. Infelice v. United States,* 528 F.2d 204 (7th Cir. 1975) as have all other cases holding authorization letters inadequate in light of § 515(a). *United States v. Wrigley,* 392 F.Supp. 14 (W.D.Mo.1975), *rev'd* 520 F.2d 362 (8th Cir. 1975), *cert. denied,* 423 U.S. 987, 96 S.Ct. 396, 46 L.Ed.2d 304, 44 U.S.L.W. 3305 (1975); *United States v. Agrusa,* 392 F.Supp. 3 (W.D.Mo.1975), *rev'd* 520 F.2d 370 (8th Cir. 1975); *United States v. Di Girlomo,* 393 F.Supp. 997 (W.D.Mo.1975); *rev'd* 520 F.2d 372 (8th Cir. 1975). District courts in this circuit

---

1. "Mr. Jeremiah T. O'Sullivan
   Criminal Division
   Department of Justice
   Washington, D. C.
   Dear Mr. O'Sullivan:
   The Department is informed that there have occurred and are occurring in the District of Massachusetts and other judicial districts of the United States violations of federal criminal statutes by persons whose identities are unknown to the Department at this time.
   As an attorney at law you are specially retained and appointed as a Special Attorney under the authority of the Department of Justice to assist in the trial of the aforesaid cases in the aforesaid district and other judicial districts of the United States in which the Government is interested. In that connection you are specially authorized and directed to file informations and to conduct in the aforesaid district and other judicial districts of the United States any kind of legal proceedings, civil or criminal, including grand jury proceedings and proceedings before committing magistrates, which United States Attorneys are authorized to conduct.

Your appointment is extended to include, in addition to the aforesaid cases, the prosecution of any other such special cases arising in the aforesaid district and other judicial districts of the United States.
   You are to serve without compensation other than the compensation you are now receiving under existing appointment.
   Please execute the required oath of office and forward a duplicate thereof to the Criminal Division.
   Sincerely,
   HENRY E. PETERSEN
   Assistant Attorney General"

2. Section 515(a) provides:
   "The Attorney General or any other officer of the Department of Justice, or any attorney specially appointed by the Attorney General under law, may, when specifically directed by the Attorney General, conduct any kind of legal proceeding, civil or criminal, including grand jury proceedings and proceedings before committing magistrates, which United States attorneys are authorized by law to conduct, whether or not he is a resident of the district in which the proceeding is brought."

and elsewhere have likewise turned aside this claim. *See, e. g., In re Patriarca,* 396 F.Supp. 859, 865–68, 871 (D.R.I.1975); *United States v. Kazonis,* 391 F.Supp. 804 (D.Mass.1975); *see also United States v. Weiner,* 392 F.Supp. 81 (N.D.Ill.1975).[3]

■ Essentially § 515(a), promulgated by Congress in 1906 (34 Stat. 816), was designed to counter the decision in *United States v. Rosenthal,* 121 F. 862 (S.D.N.Y. 1903). The basic purpose of the statute was to regulate the grant of power and authority by the Justice Department to special attorneys, primarily private outside counsel, who were to operate within the districts of regular United States Attorneys. Although the present appeal involves the appointment of a Strike Force attorney who is an employee of the Justice Department nevertheless § 515(a) is clearly applicable.

■ The most questionable aspect of the letter is its failure to say more about Mr. O'Sullivan's cases than that they involve "violations of federal criminal statutes by persons whose identities are unknown . . . ." To hold this language in compliance with § 515(a) might seem to go beyond the literal statutory language and legislative history, a step "courts must [take] cautiously for fear of overreaching their traditional role, particularly where statutes may be dangerously expanded to encroach on individual liberties." *In re Persico,* 522 F.2d 41, 65 (2d Cir. 1975). Even so, courts have held similarly worded letters of appointment, standing alone, to be sufficiently specific to comply with § 515(a), *United States v. Wrigley, supra,* 520 F.2d at 367; *Infelice v. United States, supra* at 206. We need not go so far here.

We deal not with the appointment of private outside counsel, but with that of an attorney regularly employed on a full-time basis by the Department of Justice as part of its Strike Force program. In this circumstance, "specific direction" to such an attorney "need not be embodied in a single written authorization, but may be implied from other writings, guidelines, practices and oral directions transmitted through a chain of command within the Department." *In re Persico, supra* at 66.

■ The Strike Force program involves the coordination and cooperation of numerous law enforcement officials within particular judicial districts and within the Department of Justice itself. The details of this organizational structure and of its operation have been amply explicated elsewhere, *see In re Persico, supra,* and need not be outlined here. Congress itself has not been unaware of the role played by special Strike Force attorneys within the Department and Congress has given "repeated . . . approval of Strike Force appropriations." *Id.* at 65. While these appropriations do not imply that Congress specifically approved broad grants of authority to particular special attorneys of the Strike Force, it is clear from all the circumstances that Congress authorized the Justice Department to undertake a broadgauge and effective attack on organized crime. The commission letter challenged here is an integral part of such a program and must be interpreted against this background. When the letter of appointment is examined in this context it is evident that the specific direction called for by § 515(a) has been provided.[4] Accordingly, special attorney O'Sullivan was properly authoriz-

---

**3.** The issue has received its most extensive consideration in an opinion by the Second Circuit which undertook a detailed analysis of the legislative history of § 515(a), *In re Persico,* 522 F.2d 41, 57–61 (2d Cir. 1975), and of the role of Organized Crime Strike Forces within the Department of Justice. *Id.* at 50–56.

**4.** The recent per curiam affirmance in *United States v. Zuber et al.,* 528 F.2d 981 (9th Cir. 1976) in which the court, likewise in reliance on the Second Circuit's reasoning in *In re Persi-*

co, *supra,* upheld a "strike force" attorney's authorization under § 515(a), further supports our conclusion.

It should also be noted that although the letter of appointment was from Assistant Attorney General Petersen and not the Attorney General himself, the issue of improper delegation of authority is not involved here as it was in *United States v. Giordano,* 416 U.S. 505, 94

ed to conduct the grand jury inquiry and subsequent proceedings involving the appellant.

█ Appellant also contends that 18 U.S.C. § 1955 is unconstitutional. There are two branches to his argument. First, he claims § 1955 violates due process because it makes the federal violation dependent on varying state laws and therefore results in non-uniformity among the states as to what is or is not illegal gambling activity. However, this claim must fail. Congress is empowered to enact statutes which incorporate state laws by reference, and it is not required to achieve national uniformity in every exercise of the commerce power. *United States v. Sacco,* 491 F.2d 995, 1003 (9th Cir. 1974). *See United States v. Smaldone,* 485 F.2d 1333, 1343 (10th Cir. 1973), *cert. denied,* 416 U.S. 936, 94 S.Ct. 1934, 40 L.Ed.2d 286 (1974); *United States v. Palmer,* 465 F.2d 697, 699 (6th Cir.), *cert. denied,* 409 U.S. 874, 93 S.Ct. 119, 34 L.Ed.2d 126, *rehearing denied,* 409 U.S. 1051, 93 S.Ct. 513, 34 L.Ed.2d 505 (1972). *Cf. Schneider v. United States,* 459 F.2d 540, 542–43 (8th Cir.), *cert. denied,* 409 U.S. 877, 93 S.Ct. 129, 34 L.Ed.2d 131 (1972). Appellant also claims that § 1955 is an unconstitutional exercise of the commerce power because there was no rational basis for Congress to find that the regulated activity affects interstate commerce, or alternatively that the class of activities proscribed by the statute is not rationally connected to the stated purpose of suppressing

organized crime. However, this claim likewise cannot avail. An examination of § 1955 and the legislative history of Title VIII of the Organized Crime Act of 1970 of which it is an integral part clearly indicates that there was an adequate basis for Congress to conclude that illegal gambling has a detrimental impact on interstate commerce, and that in enacting § 1955 it would be within the bounds of the commerce power. *United States v. Hunter,* 478 F.2d 1019, 1021 (7th Cir.), *cert. denied,* 414 U.S. 857, 94 S.Ct. 162, 38 L.Ed.2d 107 (1973); *United States v. Riehl,* 460 F.2d 454, 458 (3d Cir. 1972); *United States v. Becker,* 461 F.2d 230, 233 (2d Cir. 1972), *vacated and remanded on other grounds,* 417 U.S. 903, 94 S.Ct. 2597, 41 L.Ed.2d 208 (1974); *United States v. Harris,* 460 F.2d 1041, 1043–49 (5th Cir.), *cert. denied,* 409 U.S. 877, 93 S.Ct. 128, 34 L.Ed.2d 130 (1972); *see Perez v. United States,* 402 U.S. 146, 91 S.Ct. 1357, 28 L.Ed.2d 686 (1971); *Schneider v. United States, supra* at 541; *United States v. Smaldone, supra* at 1342–43.

Appellant further contends that his indictment failed to charge him properly with a violation of state law as required by 18 U.S.C. § 1955(b)(1)(i). Specifically he claims that the statute under which he was charged, viz. Mass.Gen.L. c. 271, § 17,[5] focuses upon gambling on the outcome or conduct of a contest involving skill or other special abilities, whereas he in fact was alleged to have participated in a "parimutuel numbers operation" which involves gambling on a game of chance. Appellant

---

S.Ct. 1820, 40 L.Ed.2d 341 (1974). Title 28 U.S.C. § 515(a) does not contain any express or implied statutory prohibition which would preclude the Attorney General from delegating his power to appoint special attorneys. *See* 28 U.S.C. § 510.

**5.** Chapter 271, § 17 provides in pertinent part:

  "Whoever keeps a building or room . . . , or occupies, or is found in, any place . . . with apparatus, . . . for registering bets, or buying or selling pools, *upon the result of a trial or contest of skill, speed or endurance of man, beast, bird or machine,* . . . or whoever is present in such place, . . . engaged in such business or employment; or, being such keeper, occupant, person found or

person present, . . . registers such bets, or buys or sells such pools, . . . or, being the owner, lessee or occupant of a building or room, or part thereof, or private grounds, knowingly permits the same to be used or occupied for any such purpose, . . . or whoever becomes the custodian or depository for hire, . . . of any pools, money, or property or thing of value, in any manner staked or bet upon such result, shall be punished by a fine of not more than three thousand dollars or by imprisonment in the state prison for not more than three years, or in jail or the house of correction for not more than two and one half years." (Emphasis supplied.)

points to Mass.Gen.L. c. 271, § 7,[6] which prohibits lotteries or gambling on games of chance as the appropriate statute covering the activity he is alleged to have engaged in.

■ While the government concedes that § 7 emphasizes the element of chance in the contest upon which money is wagered, *see Commonwealth v. Lake,* 317 Mass. 264, 57 N.E.2d 923 (1944), and is therefore possibly more appropriate,[7] it nevertheless contends that appellant's activity was also a violation of § 17 since the alleged "numbers game" involved the registering and maintaining of records on bets "upon the result of a . . . contest . . . or competition" namely the daily dollar totals of winning prices paid in parimutuel wagering.[8] While Massachusetts has never definitively determined whether a "numbers game" is within the purview of § 17, it would appear that state law does attempt to make distinctions about the nature of the underlying contest upon which wagering occurs. *See, e. g., Commonwealth v. Boyle,* 346 Mass. 1, 4, 189 N.E.2d 844, 846 (1963); *Commonwealth v. Demogenes,* 349 Mass. 585, 588–89, 211 N.E.2d 226, 228 (1965); *Gallinaro v. Commonwealth,* 362 Mass. 728, 733, 291 N.E.2d 420, 423 (1973). However, a decision on this question is not necessary to a disposition here. Fed.R.Crim.P. 7 provides that failure to cite a statute is not ground for reversal of a conviction if "the error . . . did not mislead the defendant to his prejudice." *See United States v. Van West,* 455 F.2d

958 (1st Cir. 1972). The indictment alleged that appellant conducted an illegal gambling business involving five or more persons which accepted bets "on a parimutuel number pool and on the result of a trial and contest of skill . . . .," operating for thirty days, and yielding a gross revenue in excess of $2,000 in a single day. The reference to a "parimutuel number pool" was enough to provide appellant with notice that a game of chance was charged, as well as a contest of skill. *United States v. Marrifield,* 515 F.2d 877, 883 (5th Cir. 1975). *See United States v. Jones,* 491 F.2d 1382, 1384 (9th Cir. 1974); *cf. Hagner v. United States,* 285 U.S. 427, 431, 52 S.Ct. 417, 419, 76 L.Ed. 861, 865 (1932). Given this notice, the failure to cite § 7 as well as § 17 was harmless error.

■ Appellant further contends that the trial court erred in allowing Cross, an FBI gambling expert, to testify concerning the results of an analysis of betting slips and records seized from the gambling operation. Appellant claims that Cross' testimony was hearsay since it was based on notes and a report prepared by others. However, we do not find this claim persuasive. The betting slips and records were originally analyzed and totalled in the FBI laboratory. Although Cross, a senior examiner, did not himself perform the calculations, he did ascertain the validity of the computations by sample checks and he personally verified that there were twenty-three writers involved in the operation. Under the circum-

---

**6.** The relevant portion of Chapter 271, § 7 provides as follows:

"Whoever sets up or promotes a lottery for money or other property of value, or by way of lottery disposes of any property of value, or under the pretext of a sale, gift or delivery . . . attempts to dispose of any property, with intent to make the disposal thereof *dependent upon or connected with chance by lot, dice, numbers, game, hazard or other gambling device,* whereby such chance or device is made an additional inducement to the disposal or sale of said property . . . shall be punished by a fine of not more than three thousand dollars or by imprisonment in the state prison for not more than three years, or in jail or the house of correction for not more than two and one half years." (Emphasis supplied.)

**7.** The government claims on appeal that the presence of § 17 instead of § 7 in the indictment involves only a miscitation which should not be grounds for reversal of a conviction. *See United States v. Van West,* 455 F.2d 958 (1st Cir. 1972) (per curiam). While our reading of the transcript suggests the citation of § 17 was probably not an inadvertent technical error, there is no need to pass on this question in light of our ultimate disposition.

**8.** The district court's charge to the jury was in a similar vein. The court instructed the jury that accepting and registering bets "on a parimutuel number pool" was "a violation of . . . Massachusetts law." In light of our disposition, this instruction was not improper.

stances Cross' testimony did not go beyond the reasonable reliance on the reports of others permitted an expert who customarily relies on such reports, and as such its admission into evidence by the trial court was not improper. *Jenkins v. United States,* 113 U.S.App.D.C. 300, 307 F.2d 637, 641 (1962) (en banc); Fed.R.Evidence 703. *See Birdsell v. United States,* 346 F.2d 775, 777 (5th Cir.), *cert. denied,* 382 U.S. 963, 86 S.Ct. 449, 15 L.Ed.2d 366 (1965), *rehearing denied,* 383 U.S. 923, 86 S.Ct. 900, 15 L.Ed.2d 680 (1966).

Appellant's final objection—that there was insufficient evidence to support the verdict—is largely premised on the assumption that Cross' testimony should not have been admitted, and accordingly is without merit.

*Affirmed.*