UNITED STATES of America, Appellant,

v.

Thomas SANABRIA, Appellee.

No. 76–1016.

United States Court of Appeals,
First Circuit.

Argued June 3, 1976.

Decided Dec. 29, 1976.

which the United States may appeal from an adverse decision in a criminal case.

In November, 1972, defendant-appellee Thomas Sanabria and fifteen others were indicted for conducting an illegal gambling business, encompassing both a numbers and a horse betting operation, in violation of 18 U.S.C. § 1955.[1] The one count indictment charged them with "accepting, recording and registering bets and wagers on a pari-mutual [sic] number pool and on the result of a trial and contest of skill, speed, and endurance of beast . . . a violation of the laws of the Commonwealth of Massachusetts, to wit, M.G.L.A. Chapter 271, Section 17 . . . ." Following some three years of pre-trial activity, a jury trial of defendant and ten co-defendants commenced on November 10, 1975 in the federal district court for the district of Massachusetts. At trial, the government introduced evidence tending to show that defendants were involved in an illegal numbers and horse betting gambling business in Massachusetts.

After both sides had rested, defendant moved for a judgment of acquittal. He argued first that there was insufficient evidence of his involvement in horse betting gambling to support a conviction upon that theory and second that, regardless of the evidence of numbers activity, the government had failed sufficiently to allege a violation of the Massachusetts laws prohibiting such conduct and could not prosecute him on a numbers theory. Defendant reasoned that the only Massachusetts statute which was cited, Mass.Gen.Laws c. 271 § 17, has been interpreted by the Massachusetts courts as not to prohibit numbers activity, which, under the case law, is proscribed exclusively by *id.* § 7, *see Commonwealth v. Boyle,* 346 Mass. 1, 189 N.E.2d 844 (1963). He therefore urged that there had not been a sufficient allegation of illegal numbers activity to permit the government to obtain a guilty verdict on that basis. This objection to the indictment had not been raised

Frederick Eisenbud, Atty., Dept. of Justice, Washington, D. C., with whom James N. Gabriel, U. S. Atty.; Stephen H. Jigger, Sp. Atty., Dept. of Justice, and Sidney M. Glaser, Atty., Dept. of Justice, Washington, D. C., were on brief, for appellant.

Francis J. DiMento, Boston, Mass., with whom DiMento & Sullivan and Donald G. Tye, Boston, Mass., were on brief, for appellee.

Before COFFIN, Chief Judge, McENTEE and CAMPBELL, Circuit Judges.

COFFIN, Chief Judge.

This case presents several substantial questions concerning the conditions under

---

1. Section 1955 makes it a federal crime to conduct an illegal gambling business that involves five or more persons and that is in substantially continuous operation for a period in excess of thirty days. It provides that "illegal gambling business" means "a gambling business which is a violation of the law of a State or political subdivision in which it is conducted."

either in the pre-trial motions or in any objection to the introduction of evidence during the trial.[2]

The district court was persuaded by defendant's argument regarding Massachusetts law, and presumably because it thought that the citation of § 17 alone could have led a criminal defendant to believe that the government was not proceeding on a numbers theory, it held that the policy that criminal defendants receive notice of the charges against them would be violated if the numbers aspect of the case were permitted to proceed. Having concluded that the indictment could not be interpreted to charge accepting bets on a pari-mutuel numbers pool, the district court excluded the government's evidence of numbers activity. It then focused on the evidence of horse betting and, finding it insufficient, entered a judgment of acquittal for defendant.

■ The government now seeks appellate review of the district court's action. It concedes that there can be no review of the district court's ruling that there was insufficient evidence of horse betting to support a conviction. However, it seeks review of the district court's decision to exclude the charge based upon numbering activities, and it requests that we order a new trial on this portion of the indictment. If we have appellate jurisdiction, there is no question but that the government is entitled to the relief it seeks.[3] In *United States v. Morrison*, 531 F.2d 1089, 1094 (1st Cir. 1976), which had not been decided at the time of the district court's action, we held that an indictment which was identical to that in the case at bar in all significant respects was sufficient to place the criminal defendant on notice that numbers activity was a basis upon which the government sought to

establish criminal liability under § 1955. Defendant concedes that *Morrison* is controlling if we have appellate jurisdiction.

■ Since the government may appeal an adverse judgment in a criminal case only when authorized by statute, *see United States v. Sanges*, 144 U.S. 310, 12 S.Ct. 609, 36 L.Ed. 445 (1892), the first question we must face is whether a statute authorizes this appeal. The relevant statutory provision, 18 U.S.C. § 3731, provides in pertinent part:

"In a criminal case an appeal by the United States shall lie to a court of appeals from a decision, judgment, or order of a district court dismissing an indictment or information as to any one or more counts, except that no appeal shall lie where the double jeopardy clause of the United States Constitution prohibits further prosecution.

. . . . .

"The provisions of this section shall be liberally construed to effectuate its purposes."

In deciding whether the present appeal is authorized thereunder, we must determine, first, whether the district court's action was the dismissal of an indictment "as to any one or more counts" within the meaning of § 3731, and, second, whether the double jeopardy clause will prohibit further proceedings against the defendant under § 1955 based upon allegations of numbers activity. The latter question, of course, pertains both to our appellate jurisdiction and to the constitutionality of such further proceedings against defendant.

■ The first issue arises because the district court's action was not formally a dismissal of an entire count. The portion of the indictment that charged pari-mutuel

---

**2.** The record reflects that defendant was aware of the alleged defect in the indictment before the trial began. In a post-judgment colloquy with the trial judge, defendant's counsel stated that he had been prepared to raise his objections at the beginning of trial.

**3.** Although neither party addresses this point, we observe that we see no problem with permitting a trial on only a portion of a count of

an indictment. As we discuss later, see n. 4, "severance" of a count is the general practice when a count of an indictment is duplicitous, *see* 8 Moore's Federal Practice ⁋ 8.04[1], and this strongly suggests that there is no barrier to having a retrial proceed on only that portion of the indictment which charges a § 1955 violation on a numbers theory.

numbers activity was part of the same count that charged horse betting; after the district court removed the numbers charge from the case, the single count of the indictment still charged a crime. Although the district court did not remove an entire count from the indictment, its action clearly eliminated one basis for imposing criminal liability on defendant.[4] We think this fact is sufficient, assuming no double jeopardy bar, to make the district court's action reviewable at the behest of the government.[5]

By permitting appeals from orders dismissing single counts of an indictment, Congress manifested an intention that district court orders eliminating a single ground of criminal liability from a prosecution would normally be appealable. We can think of no substantial policy which would be served by prohibiting government appeals from an order dismissing a criminal charge when that charge did not formally comprise an entire count of an indictment. The sole practical effect of such a narrow construction of § 3731 would be that, in such cases only, the government would be obliged to reindict the criminal defendant before attempting to reprosecute. There is no indication, either in the statute or its legislative history, that the use of the word "count" was intended either to limit the instances in which the government could appeal or to force the government, in certain instances, to reindict the criminal defendant before it could attempt to proceed against him anew. On the contrary, the legislative history indicates that Congress intended to remove all statutory barriers to government appeals and permit appeals from an unfavorable termination of a criminal charge whenever the double jeopardy clause does not prohibit further proceedings. See *United States v. Wilson,* 420 U.S. 332, 337–39, 95 S.Ct. 1013, 43 L.Ed.2d 232 (1975). Noting also that the last sentence in § 3731 provides that it is to be "liberally construed to effectuate its purposes", we interpret the word "count" in the statute to refer to any discrete basis for the imposition of criminal liability that is contained in the indictment. Here, the district court effectively dismissed the portion of the indictment charging a § 1955 violation based on the defendant's alleged numbering activities. Under our construction of § 3731, therefore, this order is appealable if the double jeopardy clause does not bar a future prosecution on this charge.

Turning to this question, we find that the issue of the double jeopardy consequences

---

4. If the government had succeeded in establishing that defendant had engaged in a gambling business which registered bets on a pari-mutuel numbers pool and which satisfied the other requirements of § 1955, it would plainly have proven a violation of that statute. And such a charge could have been the subject of a separate count in an indictment.

We observe that defendant could possibly have made a pre-trial objection to the indictment as duplicitous. If he had, the probable response of the district court would have been to give the government the option of proceeding on either a numbers theory or a horse betting theory. *See* 8 Moore's Federal Practice ¶ 8.04[1]. We can safely assume that, as to this defendant, the government would have opted for the former and that the case would have been tried solely on a numbers theory, a fact which would have required the district court formally to dismiss an entire count of the indictment when it ruled on defendant's motion.

The possibility of such a scenario fortifies our conclusion that the word "count" in 18 U.S.C. § 3731 should be liberally construed. We can see no reason why the government's ability to appeal should depend upon whether the defendant previously challenged the indictment as duplicitous.

5. Noting that the evidence of numbering activity was excluded from the case, defendant attempts to characterize the district court's action as a judgment of acquittal which arose from an erroneous evidentiary ruling and, citing *Fong Foo v. United States,* 369 U.S. 141, 82 S.Ct. 671, 7 L.Ed.2d 629 (1962), argues that no appeal may be taken. Although § 3731 seems also to support the conclusion that an evidentiary ruling made after jeopardy had attached cannot form the basis for an appellate challenge to a judgment of acquittal, defendant's characterization of the district court's action is inaccurate. The critical ruling by the district court was that the indictment failed to charge a violation of § 1955 on a numbers theory. This ruling was in no way predicated upon an erroneous evidentiary ruling. That the numbers evidence was subsequently formally excluded is immaterial since the earlier ruling rendered the evidence irrelevant in any case.

of a dismissal of a count of an indictment by reason of its failure to provide the criminal defendant with sufficient notice of the charges against him has not been addressed by the Supreme Court. However, a series of recent decisions of the Court persuades us that the policies embodied in the double jeopardy clause will not be offended if defendant is prosecuted sometime in the future for allegedly engaging in numbers activities under circumstances constituting a § 1955 violation.

 The double jeopardy clause comes into play only when the criminal defendant has previously been "placed in jeopardy" on the charges in question. *Serfass v. United States,* 420 U.S. 377, 95 S.Ct. 1055, 43 L.Ed.2d 265 (1975). Here, there appears to be no question but that defendant was placed in jeopardy on the numbers charge since the jury was empaneled and sworn, *see Downum v. United States,* 372 U.S. 734, 83 S.Ct. 1033, 10 L.Ed.2d 100 (1963). Although it might plausibly be argued that the district court's conclusion that defendant had not been charged on a numbers theory prevented jeopardy from attaching, *cf. Kepner v. United States,* 195 U.S. 100, 133, 24 S.Ct. 797, 49 L.Ed. 114 (1904), it apparently is settled that jeopardy attaches upon the institution of trial proceedings, even if the indictment is defective. *See Illinois v. Somerville,* 410 U.S. 458, 466–67, 93 S.Ct. 1066, 35 L.Ed.2d 425 (1973); *United States v. Ball,* 163 U.S. 662, 16 S.Ct. 1192, 41 L.Ed. 300 (1896).

 The fact that defendant was placed in jeopardy of course "begins, rather than ends, the inquiry". *Illinois v. Somerville, supra,* 410 U.S. at 467, 93 S.Ct. at 1072. The fundamental value embodied in the clause is the belief that, since repeated prosecutions cause a variety of hardships, subject the defendant to a continuing state of anxiety, and enhance the possibility that, although innocent, he may be found guilty, the state with its vast resources should not

be permitted repeatedly to attempt to convict an individual for an alleged offense. *See Green v. United States,* 355 U.S. 184, 187–88, 78 S.Ct. 221, 2 L.Ed.2d 199 (1957). Since a second prosecution of an individual does not always seriously implicate this fundamental value and since there is a countervailing public interest in having criminal prosecutions terminate in just judgments, criminal defendants have never been held to have an absolute right to be placed in jeopardy only once on any given criminal charge. *See United States v. Jorn,* 400 U.S. 470, 484, 91 S.Ct. 547, 27 L.Ed.2d 543 (1971) (plurality opinion); *United States v. Tateo,* 377 U.S. 463, 466, 84 S.Ct. 1587, 12 L.Ed.2d 448 (1964). Although the policies protected by the double jeopardy clause are implicated the instant jeopardy attaches, the public and private interests at stake are such that whether a criminal defendant who has once been the subject of a criminal prosecution will enjoy protection against future proceedings depends upon the reason the first prosecution ended.

 The numbers based proceeding against defendant was terminated solely because he was deemed not to have received sufficient notice of the charges against him. Neither the judge nor the jury ever focused on what the evidence of numbering activities established regarding defendant's conduct or on whether the alleged conduct was such that criminal liability could be imposed. Because of this fact, a future prosecution in this case will not threaten one of the principal private interests protected by the clause: the criminal defendant's interest in preserving a district court's ruling that he is not criminally responsible. Here, the trier of fact had no occasion to consider whether defendant engaged in conduct that constituted a violation of § 1955. Accordingly, there is no question of the state attempting "to persuade a second trier of fact of the defendant's guilt after having failed with the first."[6] *United States v. Wilson,*

---

**6.** Where a trial terminates after the trier of fact resolved, or may have resolved, the factual issues determinative of criminal liability favorably to the defendant, the clause bars all further proceedings on that charge. *United States v. Jenkins,* 420 U.S. 358, 95 S.Ct. 1006, 43 L.Ed.2d 250 (1975). But where the trier of fact initially resolved these factual issues against

*supra,* 420 U.S. at 352, 95 S.Ct. at 1026. Neither was the numbers based charge dismissed because the judge made a purely legal determination that the defendant's alleged conduct was such that criminal liability could not be imposed. Thus, this case does not present the difficult,[7] and presently open, *see Serfass v. United States, supra,* 420 U.S. at 394, 95 S.Ct. 1055, question whether a defendant, who prevails at trial because of the trial judge's interpretation of the substantive criminal law, but who had an opportunity to raise his defense on the merits pre-trial, has a right under the double jeopardy clause not to be prosecuted again. *Compare United States v. Kehoe,* 5th Cir., 516 F.2d 78, *rehearing and rehearing en banc denied,* 521 F.2d 815 (5th Cir. 1975), *cert. denied,* 425 U.S. 945, 96 S.Ct. 1687, 48 L.Ed.2d 189 (1976) *with United States v. Lucido,* 517 F.2d 1 (6th Cir. 1975) *and People v. Brown,* 40 N.Y.2d 381, 386 N.Y.S.2d 848, 353 N.E.2d 811 (1976), *petition for cert. filed,* 45 U.S.L.W. 3317 (Oct. 4, 1976).

■ What is involved, however, is the criminal defendant's general interest in being tried only once. This is a substantial interest but one which frequently is subordinated to the public interest in having prosecutions terminate in just judgments. As a general matter, when a prosecution ends without a ruling on the criminal defendant's criminal liability as such, a future prosecution will not offend the double jeopardy clause so long as neither the prosecutor nor the judge had been able to manipulate events so that the defendant would be forced to "[forego his] valued right to have his trial completed by a particular tribu-

nal." *Wade v. Hunter,* 336 U.S. 684, 689, 69 S.Ct. 834, 837, 93 L.Ed. 974 (1949). Typically, the issue arises in cases in which the first prosecution terminated with a declaration of a mistrial, and here the rules are clear. When the mistrial is declared either sua sponte or upon a motion by the prosecutor, there will be no double jeopardy bar to future proceedings if "manifest necessity" or "the ends of public justice" required the mistrial order. *See United States v. Sanford,* —— U.S. ——, 97 S.Ct. 20, 50 L.Ed.2d 17 (1976); *Illinois v. Somerville, supra.* More significantly for this case, when the defendant moves for a mistrial as the result of developments in the prosecution which are not attributable to prosecutorial or judicial overreaching, the motion "is ordinarily assumed to remove any barrier to reprosecution, even if the defendant's motion is necessitated by prosecutorial or judicial error." *United States v. Jorn, supra,* 400 U.S. at 485, 91 S.Ct. at 557; *see United States v. Dinitz,* 424 U.S. 600, 96 S.Ct. 1075, 47 L.Ed.2d 267 (1976).

■ We believe the cases permitting future prosecutions of defendants whose first trials ended in mistrials following their motions control this case. Here, as in the mistrial context, defendant elected to forego his valuable right to have his trial on numbers charges concluded by the first tribunal. He did so because he believed—incorrectly as it turns out—that, because of a prosecutorial error, the indictment insufficiently alleged a § 1955 violation on a numbers theory. Defendant has not made, nor can he make, any suggestion that the government intentionally manipulated events to gain some advantage at the first

the criminal defendant, a future proceeding or prosecution does not violate the clause, *see North Carolina v. Pearce,* 395 U.S. 711, 717, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969), even when, following the determination by the trier of fact, the court entered a judgment of acquittal on the merits. *United States v. Wilson, supra.*

7. That issue is a difficult one because the criminal defendant has received a determination, after jeopardy attached, that he must prevail on the merits. Although the foregoing suggests that the most fundamental values pro-

tected by the clause are substantially implicated in such a case, the matter is complicated since the defendant could have raised his legal defense on the merits prior to trial, before any of the values protected by the clause were implicated. The decision of this question requires a delicate accommodation between the private interests at stake and the public interest in having criminal convictions end in just judgments. Happily, we need not attempt to strike this balance here.

trial or to force defendant to forego his right to proceed before the first tribunal. Indeed, both the record in the case and the logic of our decision in *United States v. Morrison, supra,* virtually compel the conclusion that the indictment placed defendant at no disadvantage at the first trial. Since defendant voluntarily requested termination of proceedings based upon the numbers activities before there had been any determinations regarding either his conduct or its legal consequences, and since there can be no suggestion that defendant's request was attributable to developments resulting from prosecutorial or judicial overreaching, we hold that there is no double jeopardy bar to a future prosecution on this cause. In so holding, we note that we are following at least one of our sister circuits. *See United States v. DiSilvio,* 520 F.2d 247 (3d Cir.), *cert. denied,* 423 U.S. 1015, 96 S.Ct. 447, 46 L.Ed.2d 386 (1975).

We observe that had the government foreseen the possible objection to the indictment during the trial, called it to the court's attention, and requested the court to declare a mistrial if it believed such an objection would be well taken, *Illinois v. Somerville, supra,* would appear to compel the conclusion that the double jeopardy clause would not have barred further proceedings following a declaration of mistrial. Certainly, the government's right to institute further proceedings cannot be any the less when the defendant, not it, makes the motion that results in the termination of a cause.

We conclude that the district court's action dismissing the numbers charge is reviewable under § 3731. As we have already indicated the district court, not having the benefit of *Morrison,* erred in terminating this aspect of the prosecution. The judgment of the district court is, therefore, vacated and the case is remanded so that the government may try defendant on that portion of the indictment that charges a violation of § 1955 based upon numbering activities.

*So ordered.*