UNITED STATES of America

v.

Harold PATIN.

Crim. A. No. 80–313.

United States District Court,
E. D. Louisiana.

Oct. 30, 1980.

John Patrick Deveney, Asst. U. S. Atty., New Orleans, La., for plaintiff.

Edward M. Baldwin, New Orleans, La., for defendant.

HEEBE, Chief Judge.

 Harold Patin is charged in a two–count indictment with possessing stolen mail and forging a government check in violation of 18 U.S.C. §§ 1708 and 495 (1976), respectively. His trial was originally scheduled for Monday September 29, 1980, but on that date this Court continued

his trial date to October 17, 1980, upon application of his defense counsel. The application for a continuance recited that the continued time would be excludable from the time requirements of the Speedy Trial Act, 18 U.S.C. § 3161 *et seq.*, under subsection 3161(h)(1)(D) which permits time to be excluded from the Act's time requirements for "delay resulting from trial with respect to other charges against the defendant." The trial referred to in the application will commence in state court on October 7, four days after the final date permissible under the Act for prosecution. The problem, however, is that the section cited in the application and order continuing the trial date may not be applicable because there is no other proceeding that will come to trial during the Speedy Trial Act's time period. Therefore, if this interpretation of the Act is correct, the time period under the Act will have tolled before the state proceeding commences, precluding subsequent federal prosecution. But because this Court is of the opinion that another section of the exclusion provisions of the Act is applicable, regardless of the applicability of the above subsection, this Court now issues this memorandum to explain this Court's actions more fully.[1]

Subsection 3161(h)(8)(A) of the Speedy Trial Act permits a judge, on his own motion, to continue a trial date and have the continued time excluded from the Act's time requirements if the judge finds that "the ends of justice served by taking such action outweigh the best interest of the public and the defendant in a speedy trial." The ends of justice would be well served in this case by continuing the date of the defendant's trial. Forcing the defendant to trial this week before the time period runs out would put an added strain on him by forcing him to stand for trial twice in one week's time. It would also "deny counsel for the defendant . . . the reasonable time necessary for effective preparation" of his defense because the attorney representing

Patin on his federal charges is not the same attorney who will represent him on the state charges. *See* § 3161(h)(8)(B)(iv). Also, the government agreed to the continuance of the defendant's trial on the federal charges because it contemplated dropping the federal charges against him if he should be convicted in state court. This ground for excluding the time resulting from a continuance merits further elaboration.

■ Federal prosecution subsequent to a state conviction does not violate the Double Jeopardy Clause even if the federal prosecution is for the same acts as the state prosecution. *Abbate v. United States*, 359 U.S. 187, 79 S.Ct. 666, 3 L.Ed.2d 729 (1959). *See United States v. Wheeler*, 435 U.S. 313, 316–18, 98 S.Ct. 1079, 1082–83, 55 L.Ed.2d 303 (1978). *See generally* Note, *The Problem of Double Jeopardy in Successive Federal–State Prosecutions: A Fifth Amendment Solution*, 31 Stan.L.Rev. 477 (1979). The rationale for this rule is that each citizen owes allegiance to the laws of two sovereigns, the federal government and the state, and that each sovereign is entitled to prosecute a citizen for breach of its own laws. Therefore, a rule barring prosecution by one sovereign after prosecution by another would allow one sovereign to effectively nullify another sovereign's criminal law, particularly if the first prosecution was for a relatively minor offense. *See United States v. Wheeler, supra*, 435 U.S. at 316–18, 98 S.Ct. at 1082–83. Yet, although such successive prosecutions are constitutionally permissible, the Supreme Court has written that the potential for abuse of this authority call for sympathy and self–restraint when the government examines whether to prosecute a person after he has been convicted of a similar offense in another court. *See Bartkus v. Illinois*, 359 U.S. 121, 138, 79 S.Ct. 676, 686, 3 L.Ed.2d 684 (1959).

■ In response to the Supreme Court's call for sensitivity to the plight of potential federal defendants in situations such as the

---

1. In issuing this opinion, this Court has considered all of the criteria outlined in § 3161(h)(8)(B) as well as the government's representations regarding the possibility that it

may dismiss the pending federal charges under the *Petite* policy, which surely constitutes an "other[ ]" factor for this Court to consider. *See infra.*

one presented here, the Justice Department promulgated the *Petite* policy, named after the Supreme Court case in which this policy was · first recognized, *Petite v. United States*, 361 U.S. 529, 80 S.Ct. 450, 4 L.Ed.2d 490 (1960).[2] This executive policy, which is not constitutionally mandated, "was designed to limit the exercise of the power to bring successive prosecutions for the same offense to situations comporting with the rationale for the existence of that power," *Rinaldi v. United States*, 434 U.S. 22, 28–29, 98 S.Ct. 81, 84–85 (1977) (per curiam), and "serves to protect interests which, but for the 'dual sovereignty' principle inherent in our federal system, would be embraced by the Double Jeopardy Clause." *Id.* at 29, 98 S.Ct. at 85. Under this "firmly established policy," *Thompson v. United States*, 444 U.S. 248, 248, 100 S.Ct. 512, 62 L.Ed.2d 457 (1980) (per curiam), "United States Attorneys are forbidden to prosecute any person for allegedly criminal behavior if the alleged criminality was an ingredient of a previous state prosecution against that person. An exception is made only if the federal prosecution is specifically authorized in advance by the Department itself, upon a finding that the prosecution will serve 'compelling interests of federal law enforce- ment.' " *Id.* (footnote omitted). This policy serves the interests of both the public and the accused: "The policy is useful to the efficient management of limited Executive resources and encourages local responsibility in law enforcement. But it also serves the more important purpose of protecting the citizen from any unfairness that is associated with successive prosecutions based on the same conduct." *Rinaldi v. United States, supra*, 434 U.S. at 27, 98 S.Ct. at 84. In this regard, because "[t]he overriding purpose of the *Petite* policy is to protect the individual from any unfairness associated with needless multiple prosecutions," *id.* at 31, 98 S.Ct. at 86, "[t]he defendant, therefore, should receive the benefit of the policy whenever its application is urged by the Government." *Id.* (footnote omitted).

■ The benefits to the defendant and the public from application of the *Petite* policy to continue the trial demonstrably outweigh their interests in a speedy trial. In this case, application of the policy will not automatically lead to the dismissal of the outstanding federal charges against the accused. Instead, engaging the Justice Department's *Petite* policy will lead to a continuation of the accused's trial date. In the context of this case, however, this distinction does not make a difference. Deferring the accused's trial date until after the resolution of the pending state proceeding may lead to the dismissal of the pending federal charges. While this dismissal may not produce the personal satisfaction of having bested the government in its attempt to prove its case that an accused might glean from a "not guilty" verdict, the dismissal of the federal charges will surely save the accused any anguish he may undergo in awaiting the outcome of the federal proceeding and it will unquestionably save him from suffering the punishment, communal obloquy, and other collateral detriments that could accompany conviction on these charges. In addition, as stated above, application of the *Petite* policy as the justification for continuing the defendant's trial (and also excluding the continued time) rather than forcing the defendant to trial before the conclusion of the time period permitted by the Speedy Trial Act will save the accused from the difficulties attendant upon being forced to go to trial in different courts, before different sovereigns, assisted by different attorneys, within the span of one week. It is impossible at this time to predict the outcome of either the state court proceeding against the accused or the Justice Department's determination under the *Petite* policy whether to prosecute the accused if he is convicted at his state trial. But because application of the *Petite* policy

---

2. This policy was first instituted by a memorandum issued by then Attorney General William Rogers on April 6, 1959, seven days after *Bartkus* and *Abbate* were decided. This memo- randum is reprinted in large part at *United States v. Mechanic*, 454 F.2d 849, 856 n.5 (8th Cir. 1971).

will clearly benefit the accused at this moment, and because "the federal courts should be receptive, not circumspect, when the Government seeks leave to implement that policy," *Rinaldi v. United States, supra,* at 29, 98 S.Ct. at 85, it is the opinion of this Court that the requirements of § 3161(h)(8) to justify an excludable continuance under the Speedy Trial Act have been met with regard to the defendant's interests.[3]

It is also clear that, in this case, the interests of the public would also be served by continuing the accused's trial. As stated above, proper application of the Justice Department's *Petite* policy permits the executive branch to husband its limited resources and use them to prosecute more effectively the offenses currently characterized by a major interest in federal prosecution: white–collar crime, public corruption, narcotics violations, and organized crime. *See* [1973] U.S. Dep't of Justice, Att'y Gen. Ann.Rep. 8. *Cf.* 24 Crim.L.Rep. (BNA) 2066–67 (Oct. 18, 1978) (former Attorney General Griffin Bell). While the defendant's alleged crimes, possession of stolen mail and utterance of a forged government check, are not trivial offenses, they do not fall within the categories outlined by the Justice Department as the major focus of federal prosecutorial efforts. Hence, when considered at a macro level, the public's interest in speedily prosecuting this defendant for the crimes charged against him is outweighed by the saving in resources of the executive branch that would accompany application of the *Petite* policy if the accused is convicted in state court–thereby both "encouraging local responsibility in law enforcement," *Rinaldi v. United States, supra,* 434 U.S. at 27, 98 S.Ct. at 84 (footnote omitted), and vindicating the state's interest in law enforcement–which would

then permit the federal government to transfer its resources to other, and more important, sectors. This conclusion is also true when the public's interest is considered at a micro level–that is, in prosecuting this defendant for these alleged federal crimes. "[I]n American jurisprudence, at least, a private citizen lacks a judicially cognizable interest in the prosecution or nonprosecution of another." *Linda R. S. v. Richard D.,* 410 U.S. 614, 619, 93 S.Ct. 1146, 1149, 35 L.Ed.2d 536 (1973). While the public has an undeniable interest in seeing that the criminal law is faithfully enforced and that individual offenders are punished, *see Richmond Newspapers, Inc. v. Virginia,* ⸺ U.S. ⸺, ⸺ – ⸺, 100 S.Ct. 2814, 2824–2825, 65 L.Ed.2d 973 (1980), "[o]ur legal system has traditionally accorded wide discretion to criminal prosecutors in the enforcement process," *Marshall v. Jerrico, Inc.,* 446 U.S. 238, 248, 100 S.Ct. 1610, 1616, 64 L.Ed.2d 182 (1980), in deciding what charges, if any, to bring against which defendants. *See also* Note, *Separation of Powers and Defense Witness Immunity,* 66 Geo.L.J. 51, 51–52 & nn. 1–5 (1977). The executive branch is lodged with the authority to bring prosecutions on behalf of the public, and the executive branch is accountable at the polls to the public for the charging decisions it makes. And it is also beyond cavil, that is not the office of the judicial branch to decide what prosecutions are important, or what prosecutions the government may or should legitimately bring, "so long as 'the selection [is] [not] deliberately based upon an unjustifiable standard such as race, religion, or other arbitrary classification.'" *Bordenkircher v. Hayes,* 434 U.S. 357, 364, 98 S.Ct. 663, 668, 54 L.Ed.2d 604 (1978) (*quoting Oyler v. Boles,* 368 U.S. 448, 456, 82 S.Ct. 501, 505, 7 L.Ed.2d 446 (1962)). The government has

---

**3.** Because the defendant's Sixth Amendment right to a Speedy Trial is not implicated here– since this memorandum merely assigns an alternative justification for excluding the time from the Speedy Trial Act resulting from a continuance already requested by the defense– and because the defendant has no constitutional right to enforce the *Petite* policy, the defendant here is not put to the task of making a

choice that may have the effect of discouraging the exercise of his constitutional rights. *See Jenkins v. Anderson,* 447 U.S. 231, 236, 100 S.Ct. 2124, 2128, 65 L.Ed.2d 86 (1980); *Chaffin v. Stynchombe,* 412 U.S. 17, 30, 32, 93 S.Ct. 1977, 1984, 1985, 36 L.Ed.2d 714 (1973); *Crampton v. Ohio, reported sub nom. McGautha v. California,* 402 U.S. 183, 213, 91 S.Ct. 1454, 1470, 28 L.Ed.2d 711 (1971).

made the determination that the public interest in bringing this accused to book for the crimes against him is, at this time, outweighed by other valid considerations. This Court will not second guess that judgment.

In conclusion, continuing the defendant's federal trial based on the government's representations regarding its possible application of the Justice Department's *Petite* policy, and excluding the time resulting from the continuance, will serve the "ends of justice" in this case and demonstrably outweighs the accused's and the public's interest in a speedy trial. Not granting a continuance will impair the defense's efforts, *see* § 3161(h)(8)(B)(iv), and would be likely to result in a "miscarriage of justice", *id.* at (i), by subjecting the accused to a second prosecution he may not otherwise be forced to endure. Because of these conclusions, the defendant's trial should be continued and the time resulting from this continuance should be excluded from the operation of the Speedy Trial Act.