UNITED STATES of America, Plaintiff,

v.

Raymond Luc LEVASSEUR, Jaan Karl Laaman, Thomas William Manning, Richard Charles Williams, Carol Ann Manning, Patricia Helen Gros, and Barbara Curzi, Defendants.

No. 85 Crim. 143.

United States District Court, E.D. New York.

May 14, 1986.

John Gallagher, Asst. U.S. Atty., E.D. N.Y., for plaintiff.

William M. Kunstler, New York City, for defendant Thomas Manning.

Margaret Ratner, Law Offices of William M. Kunstler, New York City, for defendant Barbara Curzi.

Elizabeth Fink, Brooklyn, N.Y., for defendant Carol Ann Manning.

Lynne Stewart, New York City, for defendant Richard Williams.

Jesse Berman, New York City, for defendant Jaan Laaman.

Robert Boyle, Brooklyn, N.Y., for Legal Ass't. to defendant Levasseur.

Raymond Luc Levasseur, pro se.

MEMORANDUM AND ORDER

GLASSER, District Judge:

An indictment was filed on March 12, 1985 charging the defendants with conspiracy to bomb buildings used in interstate commerce and buildings used by government agencies; with the actual bombings of ten buildings and with the attempted bombing of an eleventh in violation of 18 U.S.C. §§ 2, 371, 844(f) and (i).

At the time the indictment was filed the defendants Thomas and Carol Manning were fugitives. They were captured approximately six weeks later. Pre-trial motions seeking a wide variety of relief were filed on behalf of all defendants and hearings on and the disposition of those motions continued during the ensuing months. Jury selection finally commenced on Octo-

ber 3, 1985 and the trial began on October 21, 1985. During the course of the trial, for reasons which need not be recounted here, a mistrial was declared as to Patricia Gros and her case was severed from that of her co-defendants on November 21, 1985.

During the course of the trial, approximately 160 witnesses were called and approximately 1500 exhibits were received in evidence. In addition, a variety of charts were received as pedagogical devices to assist the jury. The defendants who, the Court was informed, were the objects of the most extensive manhunt in the history of the United States, were also the objects of more than routine security precautions while in the courthouse and while being transported to and from the Metropolitan Correction Center.

The jury returned a partial verdict on March 4, 1986 and a final verdict on March 7, 1986, five months after jury selection commenced. Thomas Manning and Jaan Laaman were convicted of conspiracy and of six of the substantive counts. Raymond Levasseur and Richard Williams were convicted of conspiracy and of five of the substantive counts. Carol Manning and Barbara Curzi were convicted of conspiracy and of two of the substantive counts. Carol Manning was specifically acquitted of Count 10. As to the other counts on which the jury reported they were unable to agree, a mistrial was declared. Thus, a mistrial was declared as follows: Levasseur—six counts; Richard Williams—six counts; Thomas Manning—five counts; Jaan Laaman—five counts; Carol Manning—eight counts and Barbara Curzi—eight counts.

Sentence was imposed upon each of the defendants during the week of April 28, 1986 with the last sentence imposed on Thomas Manning on May 2, 1986. At the time of sentence each defendant moved to dismiss the open counts pertaining to him or her. Those motions were denied. The defendants then requested that a trial date be set with respect to those counts, insisting that 18 U.S.C. § 3161(e) requires that the trial must commence "within seventy days from the date the action occasioning the retrial becomes final." The government has represented that if the convictions are affirmed on appeal they will not reprosecute the defendants on the open counts and will move that those counts be dismissed. In the event, however, that the convictions are reversed on appeal, then the government indicated that they will reprosecute the defendants on the open counts and on any or all counts as to which their respective convictions may be reversed. The defendants have filed notices of appeal.

■ This motion was brought by the government seeking an order pursuant to 18 U.S.C. § 3161(h)(8)(A) or § 3161(h)(1) which would exclude from the Speedy Trial Act calculations the time up to the determination of the appeals from the judgments of convictions. For the reasons which follow, the motion is granted.

18 U.S.C. § 3161(h)(8)(A) provides in substance that excluded in computing the time within which a trial must commence shall be any period of delay resulting from a continuance granted by a judge "on the basis of his findings that the ends of justice served by taking such action outweigh the best interest of the public and the defendant in a speedy trial." The statute requires that the reasons for such findings must be set forth. Some of the factors a judge shall consider in determining whether to grant such a continuance are listed in 3161(h)(8)(B). None of those factors is applicable here, but that list is not exclusive.

This motion appears to present a question of novel impression. Neither the government nor defense counsel has called the court's attention to any dispositive precedent nor has the Court's research uncovered any.[1]

---

1. The absence of precedent in such a case is probably explained by the unlikelihood that defendants would object to the requested delay which would normally be granted upon consent of the parties.

There are some cases which, though not presenting identical facts, provide touchstones that guide the way to a decision. In *United States v. Scalf,* 760 F.2d 1057 (10th Cir.1985), the defendant's first trial ended in a conviction which was reversed on appeal. The date for his second trial was originally set for July 14, 1983, but on July 5th the government made an oral motion for a continuance. The Government's motion was made so that the Solicitor General of the United States could determine whether or not to seek certiorari. That motion was granted on July 13th. November 14, 1983 was fixed as the new trial date. The defendant was again convicted upon his second trial and on appeal contended that his conviction must be reversed because § 3161(e) of the Speedy Trial Act was violated. The Court of Appeals reversed, holding that "the time consumed in making a decision whether to seek certiorari is not an excludable period of delay recognized by § 3161(h) and a continuance granted for such purpose is likewise not excludable delay." 760 F.2d at p. 1059. It is important to note, however, that the Order of the district court in granting the continuance was not bottomed upon § 3161(h)(8)(A). In a footnote at p. 1059 the Court of Appeals pointedly observed:

> Inasmuch as the district court did not base its grant of the continuance on a finding 'that the ends of justice served by taking such action outweigh the best interest of the public and the defendant in a speedy trial,' the continuance does not meet the specific requirements of 18 U.S.C. § 3161(h)(8) (1982) and therefore cannot qualify as a period of excludable delay under 18 U.S.C. § 3161(h) (1982). We do not decide the question whether, under appropriate circumstances, a district court might find, in accordance with the parameters of § 3161(h)(8), that a continuance granted to allow the government adequate time to decide whether or not to seek certiorari of a prior appeal serves 'the ends of justice,' thereby qualifying the continuance as excludable delay."

Similarly instructive is *United States v. Patin,* 501 F.Supp. 182 (E.D.La.1980). A continuance was granted in the federal court to permit the defendant to be tried first in a state court on similar charges. The applicability of 18 U.S.C. § 3161(h)(1)(D) upon which the defendant's motion for a continuance was based, was in doubt. That section permits time to be excluded for "delay resulting from trial with respect to other charges against the defendant." The reason for doubt was that the state proceeding would not come to trial during the Speedy Trial Act's time period, therefore "the time period under the Act will have tolled before the state proceeding commences, precluding subsequent federal prosecution." The government agreed to the continuance of the defendant's trial on the federal charges because it contemplated dropping the federal charges against him if he should be convicted in state court in accordance with its *Petite* policy. See *Petite v. United States,* 361 U.S. 529, 80 S.Ct. 450, 4 L.Ed.2d 490 (1960). In granting the continuance and excluding the time pending the completion of the state trial the court said at p. 185:

> "The benefits to the defendant and the public from the application of the *Petite* policy to continue the trial demonstrably outweigh their interests in a speedy trial. In this case, application of the policy will not automatically lead to the dismissal of the outstanding federal charges against the accused.... Deferring the accused's trial date until after the resolution of the pending state proceeding may lead to the dismissal of the federal charges. While this dismissal may not produce the personal satisfaction of having bested the government in its attempt to prove its case that an accused might glean from a 'not guilty' verdict, the dismissal of the federal charges will surely save the accused any anguish he may undergo in awaiting the outcome of the federal proceeding and it will unquestionably save him from suffering the punishment, communal obloquy, and other collateral detriments that could accompany conviction on these charges."

The Court concluded, on page 187, as follows:

"... continuing the defendant's federal trial based on the government's representations regarding its posible application of the Justice Department's *Petite* policy, and excluding the time resulting from the continuance, will serve the 'ends of justice' in this case and demonstrably outweighs the accused's and the public's interest in a speedy trial. Not granting a continuance ... would be likely to result in a 'miscarriage of justice' ... by subjecting the accused to a second prosecution he may not otherwise be forced to endure. Because of these conclusions, the defendant's trial should be continued and the time resulting from the continuance should be excluded from the operation of the Speedy Trial Act."

*Scalf* and *Patin* buttress the Court's conclusion that the Government's motion should be granted.

Persuasive too, is the view that "in processing criminal cases a mechanical adherence to time limits would not serve the interests of defendant, the government, the courts, or society." *United States v. Black,* 733 F.2d 349, 351 (4th Cir.1984). At footnote 6 on page 351 in that case the Court observed that "The House Judiciary Committee stated 'that both delay and haste in the processing of criminal cases must be avoided; neither of these tactics inures to the benefit of the defendant, the Government, the courts nor society. The word speedy does not in the Committee's view denote assembly line justice, but efficiency in the processing of cases which is commensurate with due process.'"

It would be difficult to construct a hypothetical case in which a mechanical adherence to time limits would less serve the interests of the defendants, the government, the courts or society than this one. It would be idle to pursue the factor of disservice to the defendants since they are insisting upon another trial on the open counts despite the obvious benefit they would realize from a possible dismissal of those counts. The reason for that insistence is perhaps to be found in the statement to the Court made by the defendant Levasseur at the time of his sentence. In that statement he made reference to the fact that the Government spent two million dollars on this trial. (Tr. of 4/29/86 at p. 49). In the context in which that statement was made it was reasonable to infer that causing that expenditure was an objective the defendants sought to achieve. A pragmatic appraisal of the matter before me makes it reasonable to infer that to cause yet another governmental expenditure of millions of dollars is perhaps the only objective sought to be achieved by an insistence upon a re-trial on the open counts prior to an appellate determination. In drawing that inference I do not mean to suggest that the applicability of the Speedy Trial Act is ever to be conditioned upon the cost to the government of bringing a defendant to trial.

Although prejudice to the defendant is not a pre-requisite to a finding of a violation of the Speedy Trial Act,[2] the benefit to be gained by the defendant surely need not be ignored. As has already been indicated, the Government has represented in open court and in the memorandum in support of their motion, at pages 7 and 8, that they will not pursue the open counts given an affirmance by the Court of Appeals. The defendants clearly would benefit should that prove to be the case and will have lost nothing should it not. If the convictions are reversed, there will have been no needless complex and protracted second trial which might also result in a reversal based on the Second Circuit's decision. The defendants have not claimed, nor can they, that a relatively brief delay would make

---

**2.** *United States v. Scalf,* 760 F.2d 1057, 1060 (10th Cir.1985) ("... prejudice to the defendant is not a prerequisite to a finding of violation of the Speedy Trial Act's deadlines"). Cf. however, *United States v. Regilio,* 669 F.2d 1169 (7th Cir. 1981), *cert. denied,* 457 U.S. 1133, 102 S.Ct. 2959, 73 L.Ed.2d 1350 (1982) (where the Court at p. 1172, considered "any possible prejudice to the defendant from the delay ..."); *United States v. Carlone,* 666 F.2d 1112, 1116 (7th Cir.1981); *United States v. Balagula,* 629 F.Supp. 394, 398 (E.D.N.Y.1986).

inaccessible to them either witnesses or evidence or would prejudice them in any other way.

The Speedy Trial Act was not established primarily to safeguard the defendant's rights, but to serve the public interest in the prompt adjudication of criminal cases. That interest has already been served at least as to the counts on which the defendants have been convicted. Neither the public interest, nor the courts, nor society would be served by a lengthy trial which might prove to be unnecessary. See *United States v. Roemer,* 514 F.2d 1377, 1381 (2d Cir.1975); *United States v. Yagid,* 528 F.2d 962, 966 (2d Cir.1976).

For those reasons, I find that the ends of justice to be served by stopping the Speedy Trial clock until the mandate of the Court of Appeals is issued outweigh by far the best interest of the public and the defendants.

The defendants seek the dismissal of counts 2, 5, 7 and 10 which allege the bombings of the IBM Corp. building at 600 Mamaroneck Avenue, Harrison, New York; the IBM Corp. building at 3000 Westchester Avenue, Harrison, New York, The Union Carbide Corp. building at Old Saw Mill River Road, Mount Pleasant, New York, and the Sgt. John Muller Army Reserve Center at 555 East 238th Street, Bronx, New York, respectively. They contend that venue as to those counts is improperly laid in the Eastern District since each building is situated in the Southern District of New York. As has heretofore been indicated, an affirmance of the convictions by the Court of Appeals would render moot the relief sought. A determination of that issue will, therefore, be deferred until the decision by the Court of Appeals.

The Government has requested that the writs of habeas corpus *ad prosequendum* pertaining to Thomas Manning and Richard Williams be satisfied which would have the effect of transferring them to the State of New Jersey where they are awaiting trial for the murder of a New Jersey State Trooper. The State of New Jersey has also requested that they be re-turned. The background relating to New Jersey's claim of custody of Thomas Manning has been recited in a Memorandum and Order issued on September 26, 1985. A similar request, made by the Government and the State of New Jersey immediately following the return of the final verdict of the jury on March 7, 1986 was rejected until sentence was imposed. See Memorandum and Order dated April 2, 1986. That having been done, the request of the State of New Jersey should be granted. Thomas Manning and Richard Williams were first taken into custody pursuant to New Jersey arrest warrants and control over them was first exercised by virtue of those warrants. The principles of comity between sovereigns dictate that the request of the State of New Jersey be granted at this time. See *Ponzi v. Fessenden,* 258 U.S. 254, 260, 42 S.Ct. 309, 310, 66 L.Ed. 607 (1922). The defendants have no standing to attack their return to that State. See, *Bowman v. Wilson,* 672 F.2d 1145 (3d Cir.1982); *Chunn v. Clark,* 451 F.2d 1005 (5th Cir.1971); *McDonald v. Ciccone,* 409 F.2d 28 (8th Cir.1969).

Writs of habeas corpus *ad prosequendum* caused Raymond Levasseur and Carol Manning to be transported from the United States District Court in Maine to this Court. Those writs are hereby satisfied. It should be noted, however, that on April 25, 1986, Judge Gene Carter of the district court in Maine issued an order directing that the custody of Raymond Levasseur and Carol Manning be maintained at the Metropolitan Correction Center until further order of that Court.

A writ of habeas corpus *ad prosequendum* caused Barbara Curzi to be transported to this court from the Northern District of Ohio. That writ is hereby satisfied.

A writ of habeas corpus *ad prosequendum* caused Jaan Laaman to be transported to this court from the state of Massachusetts where he was in custody as a sentenced state prisoner. That writ is hereby satisfied.

SO ORDERED.