**UNITED STATES of America, Plaintiff,**

v.

**Larry Dean DUSENBERY, Defendant.**

**No. 5:91–CR–291.**

United States District Court, N.D. Ohio, Eastern Division.

March 26, 2002.

James R. Wooley, Baker & Hostetler, Ann C. Rowland, James L. Morford, Benita Y. Pearson, Office of the U.S. Attorney, Cleveland, OH, for Plaintiff.

Angelo F. Lonardo, Esq., Yelsky & Lonardo, Paul Anthony Mancino, Jr., Mancino & Mancino, Cleveland, OH, Larry Dean Dusenbery, White Deer, PA, for Defendant.

Elmer Angelo Giuliani, Cleveland, OH, for Party in Interest.

### MEMORANDUM & ORDER

O'MALLEY, District Judge.

The government has moved to stay the re-trial of defendant Larry Dusenbery's charge of engaging in a continuing criminal enterprise ("CCE") (docket no. 632). For the reasons stated below, the motion is **GRANTED,** and the re-trial of the CCE charge is stayed until after the final resolution of any and all appeals to any court filed by or on behalf of Dusenbery relative to his conviction or sentence for count two (conspiracy). Furthermore, pursuant to 18 U.S.C. § 3161(h)(8)(A) of the Speedy Trial Act, the Court will exclude from speedy trial calculations all pertinent time up to the date of final resolution of all appellate review regarding Dusenbery's conspiracy conviction. The Court ORDERS the government to timely apprise the Court of the status of Dusenbery's appeals related to his conspiracy conviction, so that the Court may remain knowledgeable about the speedy trial calculation.

### I.

The Court has set out much of the procedural history of this case in its Order dated October 31, 2000. *See* docket entry 18 in related case no. 00–CV–1781, at 2–4. The Court picks up that history here as of October 31, 2000, on which date this Court

vacated Dusenbery's CCE conviction and ordered that Dusenbery be re-sentenced for his conviction for conspiracy.

On August 17, 2001, the Court reinstated Dusenbery's original conspiracy conviction, and on December 10, 2001, the Court sentenced Dusenbery to a term of life imprisonment for the conspiracy. On January 2, 2002, Dusenbery filed a notice of appeal seeking review of his conspiracy conviction, sentence, and judgment order.

When the Court vacated Dusenbery's conviction on the CCE charge, it noted that the government could choose to re-try Dusenbery on that charge. The government indicated it did want to proceed with a re-trial, rather than a dismissal. During a pretrial hearing held on January 11, 2002, Dusenbery waived his right to a speedy re-trial until June 30, 2002 and requested the Court set the CCE charge for trial by that date. The government, however, requested that the Court continue the CCE trial until all appeals are resolved. Further, the government stated, on the record, that it would dismiss the CCE charge if Dusenbery's conspiracy appeals are unsuccessful. The Court scheduled the CCE trial for June 10, 2002, but also set a briefing schedule to address whether continuance of the trial was appropriate.

In its motion, the government succinctly states why it believes the Court should continue Dusenbery's re-trial on the CCE count and exclude the delay from the speedy trial clock:

> A trial on the CCE count prior to the resolution of all appeals would needlessly waste Court and government resources when, in all likelihood, the government will dismiss the CCE charge. The defendant will not be prejudiced by further delay, therefore, the ends of justice served by a continuance of the CCE trial outweigh the best interest of the public and the defendant in a speedy trial.

Motion at 6.

Dusenbery objects to the government's position, arguing that, if the Court delays the re-trial: (1) he will suffer "serious prejudice" because he will continue to lose the availability of witnesses, noting that three prospective witnesses have already died since the time of his original indictment; (2) he will also suffer prejudice because witnesses' memories will fade; (3) if he wins vacation of his conspiracy conviction on appeal, he may later be forced to "sit in jail" awaiting re-trial in the future, whereas he could avoid "sitting in jail" if he wins acquittal of his CCE offense at re-trial *now;* (4) if he wins a reduction of sentence on his conspiracy conviction on appeal, he should not have to worry that the government will use a future CCE conviction solely as a means to increase his total time of incarceration; and (5) an "open-ended ends-of-justice continuance" is not proper under the law. The Court finds none of these objections are well-taken.

The Court's analysis begins with 18 U.S.C. § 3161(h)(8)(A), the statute cited by the government to support its motion. This statute permits a court to exclude from the Speedy Trial calculation "any period of delay resulting from a continuance granted by [a] judge ... on the basis ... that the ends of justice served by [the continuance] outweigh the best interest of the public and the defendant in a speedy trial." The statute also states that, when weighing these competing interests, the Court must consider four factors, "among others." In the unusual circumstances of this case, none of these four factors is

especially relevant.[1] Rather, the government argues that a continuance is appropriate because the most likely result will be avoidance of a needless trial.

The few cases that address the propriety of continuing a trial date until all related appeals have been resolved, even absent agreement of the defendant, give support to the government's position. Most instructive is *United States v. Levasseur*, 635 F.Supp. 251 (E.D.N.Y.1986). In *Levasseur*, a jury convicted several defendants of some of the charges against them, but the jury was unable to reach a verdict on the other charges. The court declared a mistrial as to the open charges, and the defendants asked the court to set a re-trial date in accordance with the speedy trial statute, rather than wait until the resolution of their appeals of their convictions. The government responded, as it has in this case, by: (1) "represent[ing] that if the convictions are affirmed on appeal [it would] not re-prosecute the defendants on the open counts and [would] move that those counts be dismissed;" (2) further representing that, if "the convictions are reversed on appeal, then [it would] . . . re-prosecute the defendants on the open counts and on any or all counts as to which their respective convictions may be reversed;" and (3) accordingly, moving the court to continue the retrial and to issue "an order pursuant to 18 U.S.C. § 3161(h)(8)(A) or 3161(h)(1) which would exclude from the Speedy Trial Act calculations the time up to the determination of the appeals from the judgments of convictions." *Id.* at 252.

The *Levasseur* court granted the government's motion, finding that "the ends of justice to be served by stopping the Speedy Trial clock until the mandate of the Court of Appeals is issued outweigh *by far* the best interest of the public and the defendants." *Id.* at 254 (emphasis added). As is true in this case, the court found that none of the factors listed in § 3161(h)(8)(B) were applicable. *Id.* Rather, the *Levasseur* court weighed the "benefits to the defendant and the public from" granting the continuance against "their interests in a speedy trial." *Id.* at 253 (quoting *United States v. Patin*, 501 F.Supp. 182, 185 (E.D.La.1980), and citing *Petite v. United States*, 361 U.S. 529, 80 S.Ct. 450, 4 L.Ed.2d 490 (1960)). During the course of this deliberation, the *Levasseur* court

---

1. The four factors are listed below. The last two factors simply do not apply in this case, and the first two factors are neutral. The factors listed in the statute are:

(i) Whether the failure to grant such a continuance in the proceeding would be likely to make a continuation of such proceeding impossible, or result in a miscarriage of justice.

(ii) Whether the case is so unusual or so complex, due to the number of defendants, the nature of the prosecution, or the existence of novel questions of fact or law, that it is unreasonable to expect adequate preparation for pretrial proceedings or for the trial itself within the time limits established by this section.

(iii) Whether, in a case in which arrest precedes indictment, delay in the filing of the indictment is caused because the arrest occurs at a time such that it is unreasonable to expect return and filing of the indictment within the period specified in section 3161(b), or because the facts upon which the grand jury must base its determination are unusual or complex.

(iv) Whether the failure to grant such a continuance in a case which, taken as a whole, is not so unusual or so complex as to fall within clause (ii), would deny the defendant reasonable time to obtain counsel, would unreasonably deny the defendant or the Government continuity of counsel, or would deny counsel for the defendant or the attorney for the Government the reasonable time necessary for effective preparation, taking into account the exercise of due diligence.

18 U.S.C. § 3161(h)(8)(B).

made the following observations, all of which apply equally to this case:

- "Deferring the [defendant's] [re-]trial date until after the resolution of the [other charges] may lead to the dismissal of the [still-pending] charges. While this dismissal may not produce the personal satisfaction of having bested the government in its attempt to prove its case that an accused might glean from a 'not guilty' verdict, the dismissal of the [still-pending] charges will surely save the accused any anguish he may undergo in awaiting the outcome of the [re-trial] and it will unquestionably save him from suffering the punishment, communal obloquy, and other collateral detriments that could accompany conviction on these charges. * * * [Indeed, *not*] granting a continuance ... would be likely to result in a 'miscarriage of justice' ... by subjecting the accused to a second prosecution he may not otherwise be forced to endure." *Id.* at 253 (quoting *Patin*, 501 F.Supp. at 185) (emphasis added).

- "the Government has represented in open court and in the memorandum in support of their motion ... that [it] will not pursue the open counts given an affirmance by the Court of Appeals. The defendants clearly would benefit should that prove to be the case and will have lost nothing should it not. If the convictions are reversed, there will have been no needless complex and protracted second trial which might also result in a reversal ...." *Id.* at 254.

- "in processing criminal cases a mechanical adherence to time limits would not serve the interests of defendant, the government, the courts, or society. * * * The word speedy does not in [Congress's] view denote assembly line justice, but efficiency in the processing of cases which is commensurate with due process." *Id.* at 254 (quoting *United*

*States v. Black*, 733 F.2d 349, 351 (4th Cir.1984)).

- "The Speedy Trial Act was not established primarily to safeguard the defendant's rights, but to serve the public interest in the prompt adjudication of criminal cases. That interest has already been served at least as to the counts on which the defendants have been convicted. Neither the public interest, nor the courts, nor society would be served by a lengthy trial which might prove to be unnecessary." *Id.* at 255.

The only two other cases on point also support the government's position. *See United States v. Mapp*, 945 F.Supp. 43 (E.D.N.Y.1996) (granting a continuance of the trial on all charges on which a mistrial had been declared, and excluding speedy trial time on those charges, until sentencing occurred on the convicted charges, pursuant to § 3161(h)(8)(A)); *United States v. Patin*, 501 F.Supp. 182 (E.D.La. 1980) (continuing the defendant's federal trial until after a state trial on a similar matter was concluded, and excluding the time under § 3161(h)(8)(A)).

Dusenbery argues that the effect of granting the government's motion would be to grant an unreasonable "open-ended ends-of justice continuance." Dusenbery cites law from outside this Circuit suggesting that a continuance of indefinite length is not allowed. The Sixth Circuit Court of Appeals, however, has explicitly rejected the position that an ends-of-justice continuance must be specifically limited in time. *See United States v. Sabino*, 274 F.3d 1053, 1064 (6th Cir.2001) (rejecting the holding of *United States v. Clymer*, 25 F.3d 824 (9th Cir.1994)). Thus, granting a continuance until "after the final resolution of any and all appeals" is allowed, even though the continuance does not end on a date certain. On the other hand, open-ended ends-of-justice continuances must

be limited "by a reasonableness requirement so as to prevent unfair delays and circumventions." *Id.* (citing *United States v. Mitchell,* 723 F.2d 1040, 1044 (1st Cir. 1983), and *United States v. Pringle,* 751 F.2d 419, 433 (1st Cir.1984)). While it is preferable to grant a continuance with a "specific ending date," open-ended continuances are appropriate "in situations where 'it is impossible, or at least quite difficult, for the parties or the court to gauge the length of an otherwise justified continuance.'" *Id.* (quoting *United States v. Jones,* 56 F.3d 581, 586 (5th Cir.1995)).

■ In this case, the Court concludes that an open-ended ends-of-justice continuance is "otherwise justified." A re-trial on the CCE charge would have no meaningful effect on Dusenbery's current circumstances, because he is currently in prison serving a life sentence. Congress intended the Speedy Trial Act to prevent defendants from languishing in prison while legal matters were decided; here, Dusenbery will remain in prison during the pendency of his appeals regardless of whether the CCE re-trial goes forward, and regardless of its outcome. Further, the Court is not persuaded by Dusenbery's assertion that a continuance will cause him serious prejudice because witnesses will die or their memories will fade. As the government notes, any prejudice caused by delay has, for the most part, already been suffered in the seven years that have elapsed since the first trial. And any prejudice resulting from additional delay would most likely affect the government, which bears the burden of proof, not Dusenbery.[2]

Dusenbery's remaining arguments against a continuance—that is, that retrying him on the CCE charge *after* a

successful appeal, instead of before, could allow the government to take retributive action for his having succeeded—is entirely speculative. The putative benefit Dusenbery identifies depends both on his success on appeal and the unwarranted assumption that the government would be vindictive—a trait the government's past plea negotiation offers belies. Indeed, the arguable benefit to Dusenbery in immediate re-trial is easily outweighed by the benefit *he, alone,* would receive from a continuance: avoiding the (probably less speculative) detriment of re-conviction. The putative benefit to Dusenbery in immediate re-trial is even more strongly outweighed when the public's interest in avoiding possibly needless consumption of prosecutorial and judicial resources is added to the balance.

In sum, the Court concludes that, as in *Levasseur,* the ends of justice to be served by stopping the Speedy Trial clock on the re-trial of Dusenbery's CCE charge, until after the final resolution of all of Dusenbery's appeals relative to his conviction or sentence for conspiracy, easily outweigh the best interest of the public and the defendant in an immediate re-trial. Furthermore, because it is not possible to grant a continuance with a "specific ending date" that serves these ends of justice, it is appropriate to enter an open-ended continuance, ending after the applicable appeals are resolved. Accordingly, the government's motion for continuance and to stay the re-trial of the CCE charge is granted.

Despite this ruling, the Court will remain receptive to any reasonable request to preserve testimony or evidence relating to the CCE count, to the extent necessitat-

---

**2.** Dusenbery's assertion that he has already suffered prejudice because his mother and brother have died, and they both would have testified in his favor, is highly questionable—neither one of them testified at his first CCE trial, when they were alive.

ed by the ill health of a potential witness or for other good cause.

**IT IS SO ORDERED.**