UNITED STATES, Appellant,

v.

Raymond Luc LEVASSEUR, a/k/a
John, Jack, Jake and George, et
al., Defendants, Appellees.

UNITED STATES, Appellant,

v.

Raymond Luc LEVASSEUR, etc., et al.,
Defendants, Appellees.

Nos. 88–1198, 88–1284.

United States Court of Appeals,
First Circuit.

Submitted April 22, 1988.

Decided May 9, 1988.

Michael K. Loucks, Asst. U.S. Atty., Boston, Mass., William D. Braun, U.S. Dept. of Justice, Washington, D.C., David L. Douglass, Asst. U.S. Atty., and Frank L. McNamara, Jr., U.S. Atty., Boston, Mass., on brief, for appellant.

Peter J. Avenia and Gombiner & Avenia, New York City, on brief for defendant, appellee, Raymond Luc Levasseur.

Linda J. Thompson, and Thompson, Thompson & Jacobson, Springfield, Mass., on brief, for defendant, appellee, Barbara Curzi–Laaman.

Elizabeth M. Fink, Brooklyn, N.Y., on brief for defendant, appellee, Carol Manning.

Kenneth J. King, and Fenn & King, Jamaica Plain, on brief for defendant, appellee, Thomas Manning.

Robert J. Boyle, Brooklyn, N.Y., on brief for defendant, appellee, Richard Williams.

Daniel L. Meyers, New York City, Steven C. Schlang, and Schlang & Burrows, Northampton, on brief, for defendant, appellee, Jaan Laaman.

Before CAMPBELL, Chief Judge, BOWNES and SELYA, Circuit Judges.

SELYA, Circuit Judge.

The district court struck certain predicate acts from the Racketeer Influenced and Corrupt Organization (RICO) count, 18 U.S.C. § 1962(c), of an indictment against the defendants.[1] The government has appealed. The defendants challenge appellate jurisdiction, contending that the district court order is not now appealable pursuant to 18 U.S.C. § 3731 (quoted *infra* in pertinent part). Beyond that, they urge that the district court's order was appropriate. We conclude that the appeal is properly before us and that the lower court erred in applying judicial estoppel against the government. We, therefore, reverse.

## I. APPELLATE JURISDICTION

■ The government cannot appeal in a criminal case without express statutory authorization. *See, e.g., United States v. Martin Linen Supply Co.*, 430 U.S. 564, 568, 97 S.Ct. 1349, 1352, 51 L.Ed.2d 642 (1977). Section 3731 of Title 18 supplies

that authorization in certain instances. It provides in pertinent part:[2]

*In a criminal case an appeal by the United States shall lie to a court of appeals from a* decision, judgment, or *order of a district court dismissing an indictment* or information or granting a new trial after verdict or judgment, *as to any one or more counts*, except that no appeal shall lie where the double jeopardy clause of the United States Constitution prohibits further prosecution.

. . . . .

The provisions of this section shall be liberally construed to effectuate its purposes.

(Emphasis added.)

In the present case, the district court did not strike any count in its entirety as to any of the defendants. Rather, the district court struck a number of predicate acts from the RICO count, the number of predicate acts struck varying as to each defendant.[3] The particular acts struck were alleged violations of New York state arson laws.

---

1. The term "defendants" hereinafter refers to the following six individuals: Raymond Luc Levasseur, Thomas William Manning, Carol Ann Manning, Jaan Karl Laaman, Barbara J. Curzi, and Richard Charles Williams. The district court order does not apply to Patricia Gros Levasseur, though she is also a defendant below. Thus, we are not concerned with her on this appeal.

2. Section 3731 of Title 18 also provides in part:

An appeal by the United States shall lie to a court of appeals from a decision or order of a district court suppressing or excluding evidence or requiring the return of seized property in a criminal proceeding, not made after the defendant has been put in jeopardy and before the verdict or finding on an indictment or information, if the United States attorney certifies to the district court that the appeal is not taken for purpose of delay and that the evidence is a substantial proof of a fact material in the proceeding.

The government does not contend that its appeal is authorized pursuant to this portion of § 3731. We express no opinion, therefore, on whether appellate jurisdiction exists thereunder. *Cf. United States v. King*, 827 F.2d 864, 866–67 (1st Cir.1987) (per curiam) (district court order excluding evidence of predicate act on the basis

of Fed.R.Evid. 403 is appealable by government pursuant to § 3731).

3. Specifically, the court struck six predicate acts as to Levasseur, reducing that number of alleged acts from twenty-five to nineteen; five predicate acts as to Thomas Manning, reducing that number of alleged acts from twenty-five to twenty; eight predicate acts as to Carol Manning, reducing that number of alleged acts from eleven to three; five predicate acts as to Laaman, reducing that number of alleged acts from twenty to fifteen; eight predicate acts as to Curzi, reducing that number of alleged acts from eleven to three; six predicate acts as to Williams, reducing that number of alleged acts from nineteen to thirteen.

We note that there is no dispute as to the number of predicate acts struck as to each defendant. Our count, as to the number of predicate acts alleged as to each defendant (either originally charged or remaining) differs from the count stated by the government (in its reply brief at page two) in the cases of Levasseur, Carol Manning and Curzi. Our count is based on the copy of the indictment which the government provided in its appendix at pages 69–92. In any event, the discrepancy is not significant either to our analysis or to the outcome of this appeal.

Though technically that which was struck in each case was not an entire count, the term "count" has been liberally construed to the end that the government can appeal if the expurgated material provided a "discrete basis for the imposition of criminal liability." *United States v. Sanabria,* 548 F.2d 1, 5 (1st Cir.1976), *rev'd on other grounds,* 437 U.S. 54, 98 S.Ct. 2170, 57 L.Ed.2d 43 (1978); *see also United States v. Martin,* 733 F.2d 1309, 1310 (8th Cir. 1984) (en banc), *cert denied,* 471 U.S. 1003, 105 S.Ct. 1864, 85 L.Ed.2d 158 (1985); *United States v. Margiotta,* 662 F.2d 131, 139–41 (2d Cir.1981) (*Margiotta II*); *cf. United States v. Marubeni America Corp.,* 611 F.2d 763, 765 (9th Cir.1980) (appellate jurisdiction exists to review dismissal of portion of RICO count demanding forfeiture of income from RICO enterprise); *United States v. Alberti,* 568 F.2d 617, 621 (2d Cir.1977) (appellate jurisdiction exists to review dismissal of "substantial part of the indictment"). The rationale for the liberal construction is based on the legislative history of § 3731, which indicates a steadfast congressional intent to remove all statutory barriers to government appeals not otherwise barred by double jeopardy concerns. *United States v. Sanabria,* 548 F.2d at 5 (citing *United States v. Wilson,* 420 U.S. 332, 337, 95 S.Ct. 1013, 1018, 43 L.Ed.2d 232 (1975)).[4] This congressional intent favoring the allowance of government appeals is furthered when appealability is not made to turn on "mere pleading technicalities, such as whether the Government happened to plead the allegations affected by the challenged ruling in a separate count or together with other allegations," but rather on whether the district court's action had "the practical effect of eliminating an independent basis upon which a conviction could be secured." *Margiotta II,* 662 F.2d at 138–39.

The defendants, relying on *United States v. Tom,* 787 F.2d 65 (2d Cir.1986), argue that the predicate acts stricken from the instant indictment do not form a discrete base of criminal liability. The *Tom* case involved an indictment which, *inter alia,* included both a RICO count and a RICO conspiracy count. *Id.* at 67. The case involved twenty-five defendants and eighty-five alleged predicate acts of racketeering activity. *Id.* The district court struck three predicate acts, *one each as to each of three defendants. Id.* at 68. Striking of these predicate acts dismissed only a fraction of the RICO and RICO conspiracy counts. *Id.* at 69. The government sought to appeal immediately from the district court order, but the court of appeals concluded that appellate jurisdiction was lacking. *Id.* at 70–71. Since a pattern of racketeering activity requires at least two acts of racketeering activity, an allegation of only a single predicate act per defendant could not constitute a valid count. The court declined to construe the term "even more broadly to mean a fragmentary allegation that could not even arguably have been charged as a separate count." *Id.* at 71.

The present case is distinguishable from *Tom* in that the district court in this case struck at least five predicate acts as to each defendant. Nonetheless, though the "pattern" asseveration of the *Tom* defendants will not work, appellees here assert that the stricken predicate acts do not form a discrete basis of criminal liability for several other and further reasons.

First, they contend that the government could not have framed the indictment with a separate count, which seeks to prosecute violations of state laws. We interpret this unelaborated statement to suggest that the federal government would have no jurisdiction to prosecute state law violations criminally, as such. Second, defendants argue that the government has consistently maintained that they joined together in a single, unitary criminal enterprise, so that the con-

---

**4.** Double jeopardy concerns are not implicated by this appeal. The predicate acts at issue were struck during pretrial proceedings in the present case and, as explained more fully *infra,* these predicate acts relate to conduct which was the subject of a prior mistrial. *See United States v. Sanford,* 429 U.S. 14, 97 S.Ct. 20, 50 L.Ed.2d 17 (1976) (Fifth Amendment does not bar retrial after a mistrial due to a hung jury).

duct underlying the stricken predicate acts cannot be perceived as the basis of one or more separate and additional RICO counts. Third, they contend that, even assuming the theoretical possibility of two separate RICO counts, there is no logical basis for the resultant division; although the district court struck certain predicate acts alleged to have constituted violations of New York arson laws, other predicate acts allegedly violative of the same laws remained (together with predicate acts which alleged supposed transgressions of the arson laws of Massachusetts and the robbery laws of various states). The defendants suggest that it would be irrational to prosecute on the basis of one RICO count containing the stricken acts and a second RICO count containing the remaining ones.

We are not persuaded by the defendants' arguments. The government obviously is not seeking to supplant New York's authority to prosecute its criminal laws. The government is charging the existence of a RICO enterprise conducting a pattern of racketeering activity; by definition, this means, as it pertains here, acts involving arson *chargeable under state law. See* 18 U.S.C. § 1961(1). Even if stricken from the indictment, those allegations which were stricken comprise a recital of the alleged predicate acts of a RICO enterprise and should not be viewed as charges which they never purported to be.

With respect to the defendants' remaining arguments, we reject them as proceeding from an incorrect focus. The defendants' analysis suggests that the determination of whether the stricken matter forms a discrete basis of criminal liability depends, initially, upon that which was not stricken. Following from that (dubious) premise, defendants would require that the two parts be viewed together. When done so, the stricken and non-stricken material must be capable of division, legally and logically, into two parts—elsewise, no adequate "discrete basis" exists. The defendants point to the following Supreme Court language as support.

"Congress could hardly have meant appealability to depend on the initial decision of a prosecutor to charge in one count *what could also have been charged in two*, a decision frequently fortuitous for purposes of the interests served by § 3731." *Sanabria v. United States*, 437 U.S. at 69 n. 23, 98 S.Ct. at 2181 n. 23. (Emphasis added.)

The defendants read this language as requiring that, in order to come within § 3731, the stricken material, on the one hand, and that which remains, on the second hand, must necessarily be able to stand as two distinct counts in the same indictment, both of which can be prosecuted simultaneously. They argue that because the stricken and the non-stricken segments before us could not legally have been charged in separate counts (because the government is only alleging but one RICO enterprise) nor logically have been so charged (because there is no rational basis for the resulting division), the deleted matter does not form a discrete basis for imposing criminal liability, ergo, as defendants view the universe, § 3731 does not authorize a government appeal in this case.

To unravel this defective skein, we return to the quoted language from *Sanabria*. That language, we think, should be read in the context in which it was written and not as a determinative limitation on appealability intended to have sweeping applicability. In *Sanabria*, this court suggested that the horse betting and numbers betting allegations of the single count indictment for conducting an illegal gambling business were, at least potentially, duplicitous and that, in dismissing the numbers charge, the district court had dismissed a separate offense which could have, and perhaps should have, been set forth in a separate count. *United States v. Sanabria*, 548 F.2d at 4–5 and n. 4. The Supreme Court disagreed both with the view of the single count as duplicitous and with our interpretation of the district court action as a dismissal. *Sanabria v. United States*, 437 U.S. at 66 n. 20, 68, 98 S.Ct. at 2180 n. 20, 2180. The Court agreed, however, that had it been possible to charge two separate counts in that case, but the prosecutor had decided, nonetheless, to charge only one, there would have been "no statutory barri-

er to an appeal from an order dismissing only a portion of a count." *Id.* at 69 n. 23, 98 S.Ct. at 2181 n. 23.

We decline defendants' invitation to read into *Sanabria* a rigid requirement that what is stricken from an indictment must *necessarily* and in every case have been able to stand as a separate count, legally and logically, in the same indictment, in order to bottom an appeal under § 3731. We believe, moreover, that such a construction is contrary to the congressional intent "to authorize appeals from any order dismissing an indictment in whole or in part," *id.*, and "to broaden the Government's appeal rights" and "to remove all statutory barriers to Government appeals and to allow appeals whenever the Constitution would permit." *United States v. Wilson,* 420 U.S. at 337, 95 S.Ct. at 1019; *see also* 18 U.S.C. § 3731 ("The provisions of this section shall be liberally construed to effectuate its purposes.")

We maintain, along with appellees, that what was stricken from the indictment must provide a discrete basis for the imposition of criminal liability. Our focus, however, is front to back. We look to the expurgated material. In the present case, the district court struck at least five predicate acts as to each defendant. Since only two acts of racketeering activity are needed to satisfy the pattern of racketeering element of RICO, 18 U.S.C. § 1961(5), the striking of two or more of the predicate acts per defendant eliminated a distinct basis upon which the government could have secured a conviction. *See Margiotta II,* 662 F.2d at 139. That the acts which were struck might not have formed a separate and *additional* RICO count is irrelevant. *See United States v. Margiotta,* 646 F.2d 729, 730–33 (2d Cir.1981) (*Margiotta I*) (in one count of mail fraud alleging a single scheme to defraud, each of the mailings is a discrete basis of criminal liability and may be considered a count for purposes of § 3731); *cf. United States v. Martin,* 733 F.2d at 1310 (appellate jurisdiction exists if what was stricken provided a separate basis for prosecution, even if the government could not obtain separate convictions); *United States v. Tom,* 787 F.2d at 70 (ap-

pellate jurisdiction arguably exists "where the dismissed portion of a count is a 'discrete' basis of liability, *i.e.,* capable of being framed as a separate count, even though it would not be an 'independent' basis of liability, *i.e.,* sufficient to support a separate punishment").

Had it chosen to do so, the government could properly have framed the present RICO count with the stricken predicate acts as the *only* predicate acts alleged. In that event, the order striking the predicate acts would, it seems, have unquestionably been an order dismissing an indictment as to any one or more counts, and therefore subject to appeal by the government pursuant to § 3731. We do not find the result here different merely because the government chose to include allegations of additional predicate acts, any two of which, if proved, would satisfy that element of the RICO statute. The *Tom* case, as noted before, is distinguishable because an allegation of only a single predicate act is "a portion of a count that could not even plausibly be set forth in a separate count." *United States v. Tom,* 787 F.2d at 71.

We properly have jurisdiction over this appeal. Thus, we turn to the merits.

## II. MERITS

### New York Proceedings

The defendants were indicted and tried during 1985–86 in the Eastern District of New York on, *inter alia,* federal bombing charges. *See* 18 U.S.C. § 844(f) (causing malicious damage, by means of explosives, to buildings in whole or in part possessed and used by the United States and its departments and agencies); § 844(i) (causing malicious damage, by means of explosives, to buildings used in activities affecting interstate commerce). The particular buildings alleged to have been bombing targets were identified in separate counts of the indictment. In March 1986, each defendant was convicted of some bombing charges. Carol Manning was acquitted of one count. The jury was unable to reach a verdict as to the remaining counts and a mistrial was

declared as to those counts (hereinafter, the "open counts").[5]

As to the counts which had produced convictions, the defendants appealed. They also invoked the Speedy Trial Act, *see* 18 U.S.C. § 3161(e), and requested that the district court set a date for retrial of the open counts. The government moved to stay retrial and for a determination of excludable delay under the Speedy Trial Act, seeking to exclude the time until the appeals from the judgments of conviction had been finally determined. The government stated:

> [T]he government represents that it will not retry the open counts unless there is a reversal by the Second Circuit. The ends of justice thus will best be served by awaiting the outcome of the appeal in this case. *If the convictions are affirmed, there will be no retrial on the open counts.* If the convictions are reversed, there will have been no unnecessary squandering of resources at a second trial which might likewise have to be reversed based on the Second Circuit's ruling. [Emphasis added.]

In May 1986, the district court, Glasser, J., determined that the ends of justice served by excluding the period of time outweighed the interest of the public and the defendants in a speedy trial. *United States v. Levasseur*, 635 F.Supp. 251 (E.D.N.Y.1986). Judge Glasser granted the government's motion. *Id.*

The next chapter was written in April of 1987, when the Second Circuit affirmed the convictions. *United States v. Levasseur*, 816 F.2d 37 (2d Cir.1987). Thereafter, the government, true to its promise, moved in district court for dismissal of the open counts. Judge Glasser allowed the motion, but did not indicate whether the dismissal was to operate with or without prejudice. The defendants subsequently requested

that the order of dismissal be with prejudice, but their request was rejected.

### Massachusetts Proceedings

In May 1986, the defendants were indicted in the District of Massachusetts for violations of the RICO statute, 18 U.S.C. § 1962(c), for RICO conspiracy, 18 U.S.C. § 1962(d), and for seditious conspiracy, 18 U.S.C. § 2384. The indictment alleged numerous predicate acts to undergird the substantive RICO charges. Among them, the indictment alleged violations of New York's arson laws based on the very same conduct which had underlain the federal bombing prosecution in the Eastern District of New York, including the "open counts." Defendants moved to dismiss so much of the Massachusetts indictment as referred to the open counts, or to exclude proof of the underlying evidence. Defendants' alternative motion was premised, *inter alia*, upon grounds of judicial estoppel. They argued that the government's representation to Judge Glasser that the open counts would not be retried precluded it from alleging in the Massachusetts case a series of predicate acts arising out of the same conduct. On June 24, 1987, Judge Young rejected this and other (related) arguments and refused to dismiss the challenged portion of the indictment or to exclude proof of the challenged predicate acts. On January 13, 1988, Judge Young reconsidered and ruled that the government was judicially estopped from proving as predicate acts in the RICO substantive count any of the conduct underbracing the "open counts." This appeal followed.[6]

### The District Court's Rationale

Judge Young's analysis—which we set out without necessarily concurring with every component part—proceeded as follows. The government is subject to judicial estop-

---

5. We count the open counts as follows: Levasseur—six counts; Thomas Manning—five counts; Carol Manning—eight counts; Laaman—five counts, Curzi—eight counts; and Williams—six counts.

6. Actually, there are two. Appeal No. 88–1198 is the appeal from the order entered on January 13, 1988. The district court then issued a re-

script explaining its reasoning on March 14, 1988. The government sought reconsideration. Appeal No. 88–1284 is the appeal from the district court's denial of the reconsideration motion. For the sake of convenience and because the result is the same for each, we refer to the pair of appeals in the singular.

pel whenever that doctrine is properly invoked. The government is monolithic, so the representations of an assistant United States attorney for the Eastern District of New York can bind his counterpart in the District of Massachusetts in further litigation with the same party. The government unequivocally promised to drop the open counts against the defendants. Although simultaneous but separate, or even consecutive, indictments for a substantive crime and also for RICO violations (with the same substantive crime charged as a predicate act to establish a pattern of racketeering) may be permissible, a substantive RICO prosecution requires, in a very practical sense, a full trial of each of the predicate acts alleged. Because the government abandoned its right to prosecute defendants on the open counts in order to obtain a litigation advantage, *i.e.*, relief from the time strictures of the Speedy Trial Act, it is precluded from reasserting that right. Allowing the government to proceed in the RICO case would make the government's promise not to retry the bombing charges hollow and would result in an end-run of sorts around the proper application of judicial estoppel.

Moreover, the district court concluded that the government played "fast and loose" with the courts. As Judge Young saw it, the government knew that it was giving up nothing by offering to drop the open counts, since the pending Massachusetts indictment incorporated the very conduct which underlay those counts as predicate acts. The government allowed Judge Glasser to conclude that the defendants would be spared confronting the same evidence and that significant judicial economies would accrue without telling him of the pending (sealed) indictment.

The district court's ruling, thus, was phrased as two separate bases which, singly and collectively, supported the application of judicial estoppel. One leg rested upon the concept of fundamental fairness in holding the government to a promise made in exchange for a litigation advantage. The second rested upon the need to prevent the government from successfully playing "fast and loose" with the courts.

We view the two bases as one, and discuss them in the ensemble.

### *Discussion*

The primary concern of the doctrine of judicial estoppel is to protect the integrity of the judicial process. *See* Note, *Judicial Estoppel: The Refurbishing of a Judicial Shield,* 55 Geo.Wash.L.Rev. 409, 434 (1987); Comment, *Precluding Inconsistent Statements: The Doctrine of Judicial Estoppel,* 80 Nw.U.L.Rev. 1244, 1248 (1986). In *Patriot Cinemas v. General Cinema Corp.,* 834 F.2d 208, 212 (1987), this court recognized that in certain constrained circumstances a party might be precluded from "asserting a position in one legal proceeding which is contrary to a position it has already asserted in another." We recognized that this doctrine, which we called "judicial estoppel", had "rather vague" contours. *Id.* Nevertheless, we concluded that "intentional self-contradiction" should not be "used as a means of obtaining unfair advantage in a forum provided for suitors seeking justice." *Id.* (quoting *Scarano v. Central R.R. Co.,* 203 F.2d 510 (3d Cir.1953)). If such a tactic was attempted, the court was justified in acting to deny the unfair advantage. *Id.* In this circuit, then, when a litigant is "playing fast and loose with the courts," that party will be precluded from asserting a position inconsistent with a position he or she took in an earlier proceeding. *Patriot Cinemas,* 834 F.2d at 212. *Accord United States v. Kattar,* 840 F.2d 118, 129–30 n. 7 (1st Cir.1988).

A close look at *Patriot Cinemas,* however, makes clear that the instant case cannot be force-fit into the narrow analytical mold of judicial estoppel. *Patriot Cinemas* was a civil case where, in order to obtain a clear benefit, a litigant represented to a state court that it would not prosecute certain state-law claims. The same litigant then attempted to convince a federal court to take action which would have nullified this representation and resulted in allowing the litigant to press the very claims it had previously abjured. In refusing to endorse such gamesmanship, we noted that the litigant had, in effect, made

a bargain with the state court. 834 F.2d at 213. Having obtained a litigation benefit in consequence of this bargain, it would be unconscionable to permit plaintiff to use the power of a federal court to escape from the condign burden of its bargain. *See id.* To allow a litigant to summon the authority of one court to subvert a pact made with another court would undermine the "integrity and efficacy" of the judicial system. *See id.* at 214. *Patriot Cinemas,* therefore, stands for the proposition that, before being deemed to be "playing fast and loose," a party must attempt to invoke the authority of one tribunal to override or flout a bargain made with another. Even assuming *arguendo* that this principle can operate against the government and preclude it from taking inconsistent positions in a criminal case,[7] we find that the government, within the parameters set out in *Patriot Cinemas,* has not "played fast and loose with the courts." It should, therefore, not be barred by the doctrine of judicial estoppel from alleging the New York arson violations as predicate acts for the RICO prosecution.

Our reasoning needs little embellishment. First and foremost, in this instance, the government has kept faith with the New York federal district court. In essence, to obtain a stay on retrial of the open counts, the prosecutor in Brooklyn agreed that they would not be reprosecuted if the convictions then pending on appeal were upheld. True to its word, the prosecution moved to dismiss the open counts promptly upon receipt of the Second Circuit's mandate of affirmance. Following the granting of the motion, the government took no action to reindict on the open counts. Thus, the government did exactly and precisely what it had promised to do.

Defendants argue, of course, that the inclusion of the underlying conduct as the factual basis for certain of the predicate acts in the substantive RICO count was tantamount to a reprosecution of the open counts. As Judge Young accurately observed, each essential element of a predicate act must be proven beyond reasonable doubt; thus, the evidence used to support this facet of the RICO prosecution would be essentially the same as, if not identical to, that which the government used to prosecute the open counts. But the argument, though true, is altogether beside the point.

We start from the solid premise that the government could have prosecuted the federal charges in the Eastern District of New York and—absent *any* leave of court—subsequently, or even simultaneously, prosecuted the RICO charges and obtained separate (possibly incremental) sentences if multiple convictions ensued. *See United States v. Greenleaf,* 692 F.2d 182, 189 (1st Cir.1982), *cert. denied,* 460 U.S. 1069, 103 S.Ct. 1523, 75 L.Ed.2d 946 (1983). (Indeed, defendants concede as much by not pressing objections to the inclusion as predicate acts in this indictment of the conduct underlying the counts on which they were tried and convicted in the Eastern District.) There is nothing in the record to indicate that the United States traded away this right. Rather, the granting of the prosecution's motion in Brooklyn gave each side a cognizable benefit, and burdened the government with a meaningful detriment. The prosecution was spared the expense of what it viewed as a trial which time would likely prove unnecessary.[8] In return, the

---

7. We explicitly reserved judgment on this question in *Kattar,* 840 F.2d at 129–30 n. 7, and take no view of it today.

8. We find it of some significance that, unlike in *Patriot Cinemas,* the bargain analogy is far less apt as applied here. The benefit flowing to the government from its representation—being spared an immediate retrial—was an incidental reward not a primary one. That is to say, Judge Glasser did not grant the stay to benefit the government, but because he concluded that the "ends of justice" would be served by deferring the start of a potentially unnecessary trial.

*United States v. Levasseur,* 635 F.Supp. at 254. Contrary to the view of our dissenting brother, *post* at 796, we do not believe that this conclusion was reached "[o]nly as a result of the government's" promise not to retry the open counts. Judge Glasser recognized that, regardless of the government's promise, a retrial might be rendered superfluous by a reversal in the pending appeal. 635 F.Supp. at 254. Even without the government's promise the exclusion likely would have served the ends of justice. As we see it, the ends of justice are equally well served by avoiding a costly and potentially su-

government agreed to forfeit, upon occurrence of a condition subsequent, (affirmance of certain convictions), the right to reprosecute the defendants on the open counts. That "loss" has in no way been recouped by what has now transpired. We agree with our dissenting brother that Judge Glasser, in ruling on the speedy trial motion, was concerned with what defendants stood to gain. *Post* at 796. But defendants have gained what they legitimately stood to gain: they are free from the possibility of additional incremental sentences arising out of the reprosecution of the open counts. It simply cannot plausibly be said that the government is seeking to utilize the power of the forum court to annul or abrogate the bargain which it made in the Eastern District. In a nutshell, the government's waiver of prosecution on the open counts is not inconsistent with its institution of RICO charges based on the same factual predicate. This signifies, in turn, that judicial estoppel should not attach. *See* Comment, *supra*, at 1263–64 ("the doctrine is applied only when the positions are truly inconsistent.... [f]or the invocation of the doctrine, the two positions must be diametrically opposed"); *see also United States v. Lehman*, 756 F.2d 725, 728 (9th Cir.), *cert. denied*, 474 U.S. 994, 106 S.Ct. 406, 88 L.Ed.2d 357 (1985) (assuming judicial estoppel may be applied against the government in a criminal case, it was inapplicable when government did not advocate mutually exclusive positions).

Equally important, we do not believe that Judge Glasser was led astray when he deferred retrial of the open counts pending resolution of the pending appeal, based upon the government's vow not to retry the open counts should the convictions be affirmed. *See Konstantinidis v. Chen*, 626 F.2d 933, 939 (D.C.Cir.1980) ("judicial estoppel should not be applied if no judicial body has been led astray"). It is pure surmise—and illogical surmise, at that—to suggest that Judge Glasser was misled into thinking that, by pledging to drop the open counts if the convictions on the remaining counts were affirmed, the government was promising not to utilize the facts underlying those counts as a basis for charging defendants with some different offense. At least in the absence of Double Jeopardy considerations (and none are apparent here),[9] we are loath to impute such concerns to Judge Glasser for no apparent reason. The sockdolager, we think, is simply this. While proceedings were still pending in New York—at least as early as September 1985—Judge Glasser had been apprised of the existence of the grand jury proceedings in the District of Massachusetts. Although Judge Glasser seems not to have been informed of the exact content of the RICO indictment prior to its presentment on May 30, 1986, approximately two weeks after he allowed the government's motion to exclude speedy trial time and to stay, he was not in the dark for long. Within two weeks at the outside, Judge Glasser was told that the Massachusetts RICO indictment relied upon the New York bombings (including the conduct undergirding the open counts) as predicate acts. Soon thereafter, the defendants presented Judge Glasser with the perfect opportunity to express any ire he might have felt over being led astray by his lack of knowledge. They brought a motion to change the dismissal of the open counts to operate with prejudice. But far from giving any indication that he felt he had been thrown a curve or that his decision to defer trial on the open counts was the product of some

---

perfluous trial irrespective of whether or not the government may press a separate, lawful RICO prosecution. And this assessment is in no way undermined by the inclusion of the predicate acts in the Massachusetts indictment.

9. As the dissent points out, *post* at 796, double jeopardy concerns might have prevented the inclusion of predicate acts based on the New York bombings *if* the defendants were retried and *acquitted.* But that is some other case—not this one. There was, in the long run, no acquittal on the open counts—merely dismissal without prejudice. The defendants received the full benefit of the bargain which the New York federal district court intended to confer upon them: they have been shielded from any incremental sentences which might have flowed from retrial and conviction. It does not seem unfair to hold them to the implicit trade-off—their surrender of any right to attempt to convince a jury to acquit them on the open counts.

prosecutorial hairsplitting, Judge Glasser thereafter denied the defendants' request. As we have noted in a variety of analogous contexts, the writing judge plays a "special role ... in elucidating the meaning and intendment of an order which he authored." *Martha's Vineyard Scuba Headquarters, Inc. v. Unidentified, Wrecked and Abandoned Steam Vessel,* 833 F.2d 1059, 1066–67 (1st Cir.1987); *see also Lefkowitz v. Fair,* 816 F.2d 17, 22 (1st Cir. 1987) (similar). Inasmuch as Judge Glasser was in no material way misled by not being told, specifically, about the RICO prosecution at an earlier date, the government cannot be accused on that basis of having played "fast and loose."

## III. CONCLUSION

We need go no further. We have jurisdiction to hear and determine the government's appeal. Having considered the parties' contentions fully, we are constrained to reverse.

This case does not call upon us to determine large and important questions about the dimensions of the doctrine which has come to be termed judicial estoppel, or as to whether those principles may ever be invoked against the government in a criminal case. We conclude that, in the circumstances at bar, the district court's application of judicial estoppel was improper because the government did not play "fast and loose." Its position was neither inconsistent nor deceptive, and the handling of the federal prosecutions in New York and Massachusetts, seen as a whole, did not comprise an abuse of the judicial process. Accordingly, the district court erred in striking the predicate acts.

*Reversed and remanded.*

BOWNES, Circuit Judge (dissenting).

I do not disagree with my colleagues' conclusion regarding the appealability of the district court order in this case. Because the predicate acts stricken by the district court *could* have formed the basis

for a separate RICO count, this court has jurisdiction under 18 U.S.C. § 3731. But that very statement of the basis for our review demonstrates the correctness of Judge Young's action. Simply put, the issue is this: can the government, in order to gain an advantage in a criminal prosecution, be permitted to represent to one federal court that it will not retry certain counts in an indictment, and then, having gained the advantage, relabel the same counts as predicate acts in a RICO indictment and prosecute the same defendants for the same conduct in another federal court. I agree with Judge Young that the government should not be permitted to do so.

The legal issues in this case are well-addressed in Judge Young's Memorandum and Order, with which I concur wholeheartedly.[1] I add the following in order to address points raised by the majority of this court.

In order to support its reversal of the district court, the majority relies on technical distinctions between a RICO prosecution and a prosecution for the substantive offenses serving as predicate acts for the RICO charge. With respect, I think that this overly technical reasoning serves only to mask, and thus to condone, what is in substance contradictory and deceptive conduct by the government. The majority makes much of the fact that, under governing law, the government *might* have chosen to retry the open counts, and to prosecute the RICO charges as well, in the same court. The short answer to this, of course, is that while the government might have chosen to do so, it did not. Instead, the government chose to treat the substantive counts and the RICO charges entirely separately and, indeed, to pursue them in different jurisdictions. Thus, when the government represented to Judge Glasser in New York that it would dismiss the substantive counts, the judge did not and could not know (as the government did) that those same counts would soon reappear as predi-

---

1. Because Judge Young's Memorandum and Order has not been published, an excerpt from that decision, containing the pertinent discus-

sion on judicial estoppel, has been annexed hereto.

cate act allegations in a RICO indictment. In fact, Judge Glasser had every reason to believe that after the counts were dismissed, the defendants would be free from criminal liability for the actions underlying those counts.

Given this, I think the majority's argument that Judge Glasser was not misled is farfetched. In considering the government's motion to exclude time under the Speedy Trial Act, Judge Glasser was obviously concerned with what the defendants stood to gain. *See* 635 F.Supp. at 254 ("the benefit to be gained by the defendant surely need not be ignored"). It is, therefore, hard to imagine that Judge Glasser would not have been interested in knowing that the same defendants were about to be indicted in Massachusetts for the same allegedly criminal acts. But the government did not provide him with this information.

Moreover, contrary to the majority's assertion, double jeopardy concerns are raised by this case. Had the retrial of the substantive counts not been delayed as a result of the district court's excluding time under the Speedy Trial Act, and had the defendants been acquitted, the government could not then have used those same charges as predicate act allegations in a RICO indictment. Only as a result of the government's misleading representations to Judge Glasser were the defendants denied this opportunity for acquittal.

Finally, I am disturbed by the majority's unwillingness even to acknowledge that the doctrine of judicial estoppel can be invoked against the government in a criminal case. The purpose of judicial estoppel is to prevent a party from gaining an advantage in litigation by asserting inconsistent positions in different legal proceedings. I fail to see any justification for the government being exempted from this rule. Indeed, because of the coercive power it wields, and because of the constitutional safeguards for criminal defendants, it seems especially appropriate to hold the government to this minimal standard of fair dealing.

I would affirm Judge Young's decision to strike from the RICO indictment the so-called "open counts."

I respectfully dissent.

## APPENDIX

Excerpt from *United States v. LeVasseur,* No. 86–180–Y, slip op. at 8–24 (D.Mass. Mar. 14, 1987) (Memorandum and Order) (Young, J.).

The six defendants claim that the government ought be judicially estoped from re-trying the open counts as predicate acts in the present case. *See generally* Note, *Judicial Estoppel: The Refurbishing of a Judicial Shield,* 55 Geo.Wash.L. Rev. 409 (1987). After careful reflection, this Court concludes they are right.

The doctrine of judicial estoppel [8] has been recognized for some time in the District Court for the District of Massachusetts, *see, e.g., Latino Political Action Committee v. City of Boston,* 581 F.Supp. 478, 480–81 (D.Mass.1984) (Caffrey, J.); *Toman v. Underwriters Laboratories, Inc.,* 532 F.Supp. 1017, 1019 (D.Mass.1982) (McNaught, J.), *rev'd on other grounds,* 707 F.2d 620 (1st Cir.1983), including this Court, *Palandjian v. Pahlavi,* 614 F.Supp. 1569, 1579 n. 2 (D.Mass.1985), *vacated on other grounds,* 782 F.2d 313 (1986), *cert. denied,* —— U.S. ——, 107 S.Ct. 1974, 95 L.Ed.2d 814 (1987). More recently, judicial estoppel has been expressly recognized in this circuit. *Patriot Cinemas, Inc. v. General Cinema Corp.,* 834 F.2d 208 (1st Cir. 1987). *But see Keebler Co. v. Rovira Biscuit Corp.,* 624 F.2d 366, 373 n. 7 (1st Cir.1980). As its essence, this doctrine forbids a party from asserting inconsistent positions in judicial proceedings. The doctrine is borne of "a universal judicial reluctance to permit litigants to 'play fast and loose' with courts of justice according to the vicissitudes of self-interest" as well as a desire "to protect ... the judicial process from abuse." 1B J. Moore & J. Lucas, *Moore's Federal Practice* ¶ 0.405[8] (2d ed. 1984) (citing *Scarano v. Central R. Co. of*

---

**8.** Also termed, less elegantly, the doctrine of preclusion against inconsistent positions.

*New Jersey*, 203 F.2d 510, 513 [3d Cir.1953] [Hastie, J.]).

As already stated, the six defendants' judicial estoppel argument was not clearly articulated on the papers, presumably due to the time pressures attendant to the pretrial motion session. Even so, this Court construes it to run as follows: In order to obtain relief from the time limitations of the Speedy Trial Act, the government represented to the District Court in Brooklyn that it would not retry the open counts if, on appeal, it retained the convictions and sentences resulting from the trial just completed in Brooklyn. The government made this representation knowing that in Massachusetts it was seeking a RICO indictment that included all the open counts as predicate acts and would necessarily require the retrial of each open count to support the impending RICO charge in Massachusetts. The government failed to notify the judge in Brooklyn of its then present intention and, instead, allowed the judge to believe that acceding to the government's request would result in a substantial judicial economy. Now, having gained the benefits of delay, the government seeks to retry each of the open counts as part of the RICO charge (which, as originally drafted, included twenty-six predicate acts involving eight defendants) pending in this Court—an indictment which the parties estimate will take nine months to try. The six defendants claim that the government ought be judicially estopped from pursuing this course.

To this argument, the government raises a number of strong objections. On close analysis, however, each one must be found wanting.

First, it is argued that the government cannot be estopped by the acts of its agents, since those agents are powerless to act in derogation of the public's right to full and exact enforcement of the law as written. *Cf. Phelps v. Federal Emergency Management Agency*, 785 F.2d 13 (1st Cir. 1986) (holding that the government was not

estopped to deny flood insurance coverage in the absence of a written proof of loss even though the failure to file such proof was the result of misrepresentations by an employee of the agency that such proof was unnecessary). When the government comes into court, however, the due process clause of the fifth amendment to the United States Constitution requires that it be subject to the same fundamentally fair treatment as is accorded any other litigant. Simply put, this means that, like any other litigant, the government may be held to its representations made during the course of litigation.

Consider the example set by the courts of the Commonwealth of Massachusetts.

> When ... promises are made by the public prosecutor or with his authority, the court will see that due regard is paid to them, and that the public faith which has been pledged by him is duly kept.

*Commonwealth v. St. John*, 173 Mass. 566, 569, 54 N.E. 254 (1899) (Morton, J.).

> Here the district attorney [sought] to repudiate the agreement made by an assistant district attorney.... In our opinion this is a dishonorable course for the Commonwealth to attempt to take. The highest degree of ethics should be the standard of the sovereign which should serve as an example to all others. The courts have a duty to enforce that standard.

*Commonwealth v. Benton*, 356 Mass. 447, 449, 252 N.E.2d 891 (1969) (Wilkins, C.J.).

Surely the government of the United States is held to a standard no less exacting. Indeed, this is expressly the law in this circuit. "Were the government to renege on its sworn promise, it is hard to conceive of a court failing to find an estoppel." *In re Snoonian*, 502 F.2d 110, 112 (1st Cir.1974) (citing *Benton*). Further, there is a variety of circumstances such as plea bargaining and the use of letter immunity in which the government's representations are subject to specific enforcement.[9]

---

9. As to the specific enforcement of plea bargains, *see Santobello v. New York*, 404 U.S. 257, 262, 92 S.Ct. 495, 498, 30 L.Ed.2d 427 (1971)

("[W]hen a plea rests in any significant degree on a promise of agreement of the prosecutor, so that it can be said to be part of the inducement

Courts are generally reluctant to permit the government "by words and inaction to lull a party into a false sense of security and then by an abrupt volte-face strip the party of its defenses without a hearing." *United States v. Baus*, 834 F.2d 1114, 1123 (1st Cir.1987). In light of these considerations, this Court is not hesitant to hold that the government of the United States is, like any other litigant, subject to judicial estoppel whenever that doctrine is properly invoked.

Second, the government submits that, even if it is subject to the doctrine of judicial estoppel, the representations of an Assistant United States Attorney in the Eastern District of New York cannot estop the proper enforcement of the laws by the United States Attorney for the District of Massachusetts. Analogizing the present circumstances to the context of a plea bargain in the Second Circuit, the government argues that the representations of an Assistant United States Attorney in the Eastern District of New York can, at most, bind only the government attorneys in that district. It is settled law in the Second Circuit, at least in the plea agreement context, that one United States Attorney cannot bind another from another district unless such a restriction is specified in the plea agreement or can be inferred from the negotiations or statements at the plea colloquy. This state of the law is, of course, counter-intuitive as the Second Circuit itself has recognized:

As an original proposition, a plea agreement whereby a federal prosecutor ar-

gues that "the government" will dismiss counts of an indictment other than the ones to which guilty pleas are entered might be thought to bar the United States from reprosecuting the dismissed charges in any judicial district unless the agreement expressly limits the scope of the agreement to the district in which the dismissed charges are initially brought. However, the law has evolved to the contrary.

*United States v. Annabi*, 771 F.2d 670, 672 (2d Cir.1985) (per curiam). The situation here is emphatically not a plea bargain, however.[10] The six defendants had no meaningful opportunity to negotiate the binding scope of the conditional dismissal without relinquishing their insistence on their constitutional and statutory rights to a speedy trial. As bargaining over such rights must be wholly voluntary, it would be error to extend a doctrine arising in the plea bargain context to an adversary determination made, over defense objection, in reliance on a prosecutor's recommendation.[11] The more appropriate context is that which confronts the government when it makes representations to the court and the defendants concerning the existence *vel non* of exculpatory material. In that context, once the duty to disclose is triggered appropriately, the government is considered a monolith, its good faith is immaterial, *see Brady v. Maryland*, 373 U.S. 83, 87, 83 S.Ct. 1194, 1196, 10 L.Ed.2d 215 (1963), and the failure of any government official to make such disclosure of material

---

or consideration, such promise must be fulfilled"). Indeed, the Fourth Circuit has gone so far as to require specific performance of an offer made by a subordinate prosecutor which was withdrawn upon the directions of a superior before the defendant, acting with reasonable promptness, could accept it. *Cooper v. United States*, 594 F.2d 12, 18–19 (4th Cir.1979). Likewise, since letter immunity is lawful in this Circuit, *United States v. Winter*, 663 F.2d 1120, 1133 (1st Cir.1981) *cert. denied*, 460 U.S. 1011, 103 S.Ct. 1250, 75 L.Ed.2d 479 (1983), such agreements, if performed, will surely be enforced against the government, *see In re Snoonian*, 502 F.2d at 112, even though, since such agreements are beyond the government's statutory authority and disapproved, *United States v. Doe*, 465 U.S. 605, 614–17, 104 S.Ct. 1237, 1243–44, 79 L.Ed.2d 552 (1983); *United States v. Biag-*

*gi*, 675 F.Supp. 790, 804 (S.D.N.Y.1987), the government cannot enforce such an agreement against a witness to compel his testimony.

**10.** The six defendants here never agreed to trade their right to a speedy trial in return for a conditional dismissal in the Eastern District of New York. The District Court in Brooklyn made this decision over their objection. *See United States v. Levasseur*, 635 F.Supp. 251, 255 (E.D.N.Y.1986).

**11.** This Court need express no view here—and does not—concerning whether the Second Circuit's view of the binding effect of the government's representations during plea bargaining ought be adopted here.

exculpatory evidence (even if unaware of the duty to disclose) binds the prosecutor making the representation (even if unaware of the existence of the exculpatory material).

> The prosecutor's office is an entity and as such it is the spokesman for the Government. A promise made by one attorney must be attributed, for these purposes, to the Government. See Restatement (Second) of Agency § 272. See also American Bar Association, Project on Standards for Criminal Justice, Discovery and Procedures Before Trial § 2.1(d). To the extent this places a burden on the large prosecution offices, procedures and regulations can be established to carry that burden and to insure communication of all relevant information on each case to every lawyer who deals with it.

*Giglio v. United States,* 405 U.S. 150, 154, 92 S.Ct. 763, 766, 31 L.Ed.2d 104 (1972).[12] In the judicial estoppel context, therefore, this Court holds that the representation of any Assistant United States Attorney may, in appropriate circumstances, be invoked to estop the United States when it engages in further litigation with the same party, whether that litigation is conducted by the representing attorney or any other attorney acting on behalf of the United States.

Third, the government argues that, even if the representations of the Assistant United States Attorney in the Eastern District of New York may be considered by this Court, those representations dealt only with the circumstances under which the government would dismiss the "open counts." There is here, the government says, none of that reversal of position as to facts or law which traditionally calls for the invocation of judicial estoppel. The First Circuit sets out the complete answer to this argument in *Patriot Cinemas, Inc. v. General Cinema Corp.*:

> [W]e recognize that holding a litigant to his stated intention not to pursue certain claims is different from the "classic"

case of judicial estoppel. In the latter, a litigant asserts inconsistent statements of fact or adopts inconsistent positions on combined questions of fact and law. For example, in *Hurd* [v. *DiMento & Sullivan,* 440 F.2d 1322 (1st Cir.), *cert. denied,* 404 U.S. 862, 92 S.Ct. 164, 30 L.Ed.2d 105 (1971) ] we did not allow a litigant to claim both that a law firm did and did not represent her. *See* 440 F.2d at 1323. In *Allen* [v. *Zurich Insurance Co.,* 667 F.2d 1162 (4th Cir.1982) ] the court prevented a party from claiming that he was both an employee and not an employee of the defendant. 667 F.2d at 1167. However, in recent years courts have also applied judicial estoppel to situations such as this, where a party declares an intention not to pursue a claim. *See Matek v. Murat,* 638 F.Supp. 775, 782–83 (C.D.Cal.1986); *Wade v. Woodings–Verona Tool Works, Inc.,* 469 F.Supp. 465 (W.D.Pa.1979). In *Wade* the plaintiff brought an action for a breach of a trade secrets agreement. The defendant brought a counterclaim attacking the validity of a patent related to the trade secret. Plaintiff then moved for summary judgment on the counterclaim, arguing that he was not claiming nor would he claim patent infringement, and thus that the patent's validity was not in issue. The court granted the motion for summary judgment, but also stated its opinion that any future suit for infringement would be foreclosed by the doctrine of judicial estoppel. 469 F.Supp. at 467.

> On reflection, representations such as were made here, that a party will abandon a claim, present a *stronger* argument than do the classic cases for application of the doctrine [of judicial estoppel].

834 F.2d at 214 (emphasis in original). In this Circuit, therefore, abandonment of a claim to obtain a litigation advantage precludes the later reassertion of that claim.

Finally—and it is by far the government's most telling argument—counsel for

---

**12.** In the plea bargain context, the Supreme Court requires that:

> The staff lawyers in a prosecutor's office have the burden of "letting the left hand know what the right hand is doing" or has done.

That the breach of [a plea] agreement was inadvertent does not lessen its impact. *Santobello v. New York,* 404 U.S. at 262, 92 S.Ct. at 499.

the government here in Boston argue strenuously that the dismissal of the open counts in the Eastern District of New York, whatever the circumstances of that dismissal, simply cannot, as matter of settled law, have any effect on the ability of the government to prosecute the RICO, RICO conspiracy, and seditious conspiracy charges here. The substantive charges which make up the predicate acts charged here are, the government argues, wholly separate claims from the three claims or counts with which the six defendants are charged here. Thus, the government contends that it follows inexorably that dismissal of any substantive charge which constitutes a RICO predicate act in the present Massachusetts indictment has—and can have—no effect whatever on the prosecution of the Massachusetts indictment.

It is true that the great majority of courts which have considered the issue have held that the Double Jeopardy clause does not prohibit simultaneous but separate—or even consecutive—indictments for a substantive crime and also for RICO (with the same substantive crime charged as a predicate act to establish a pattern of racketeering). *See, e.g., United States v. Grayson,* 795 F.2d 278, 283 (3d Cir.1986), *cert. denied,* —— U.S. ——, 107 S.Ct. 927, 93 L.Ed.2d 978 (1987); *United States v. Hampton,* 786 F.2d 977, 979–80 (10th Cir.

1986); *United States v. Licavoli,* 725 F.2d 1040, 1049–50 (6th Cir.), *cert. denied,* 467 U.S. 1252, 104 S.Ct. 3535, 82 L.Ed.2d 840 (1984); *United States v. Walsh,* 700 F.2d 846, 856 (2d Cir.1983), *cert. denied,* 464 U.S. 825, 104 S.Ct. 96, 78 L.Ed.2d 102 (1983); *United States v. Greenleaf,* 692 F.2d 182, 189 (1st Cir.1982), *cert. denied,* 460 U.S. 1069, 103 S.Ct. 1523, 75 L.Ed.2d 946 (1983); *United States v. Hartley,* 678 F.2d 961, 991–92 (11th Cir.1982), *cert. denied,* 459 U.S. 1170, 103 S.Ct. 815, 74 L.Ed. 2d 1014 (1983); *United States v. Hawkins,* 658 F.2d 279, 287 (5th Cir.1981) (Unit A); *United States v. Rone,* 598 F.2d 564, 571 (9th Cir.1979), *cert. denied sub nom. Little v. United States,* 445 U.S. 946, 100 S.Ct. 1345, 63 L.Ed.2d 780 (1980); *cf. Garrett v. United States,* 471 U.S. 773, 105 S.Ct. 2407, 2415–17, 85 L.Ed.2d 764 (1985) (holding that the defendant's prosecution for a continuing criminal enterprise under the Comprehensive Drug Abuse Prevention and Control Act of 1970 following his earlier prosecution for marijuana importation did not violate the Double Jeopardy Clause); *United States v. Aleman,* 609 F.2d 298, 306–07 (7th Cir.1979), *cert. denied,* 445 U.S. 946, 100 S.Ct. 1345, 63 L.Ed.2d 780 (1980) (holding that a predicate act count and a RICO count are not multiplicitous, at least where each requires, in part, different proof).[13]

Indeed, even where a defendant has been acquitted on a substantive charge in a state

---

**13.** While initially subscribing to this majority view, *see United States v. Boylan,* 620 F.2d 359, 361 (2d Cir.1980), *cert. denied,* 449 U.S. 833, 101 S.Ct. 103, 66 L.Ed.2d 38 (1980), more recent Second Circuit decisions give strong indication that the broadly permissive approach to RICO/predicate act prosecutions previously taken in *Boylan* is being eroded in that Circuit in light of the Supreme Court's decision in *Garrett v. United States,* 471 U.S. 773, 105 S.Ct. 2407, 2410–11, 2417–19, 85 L.Ed.2d 764 (1985) (upholding the validity of using a prior criminal conviction for marijuana importation to prove the commission of a predicate act as part of a continuing criminal enterprise prosecution under 21 U.S.C. § 848, at least where the enterprise activity continued four months past the date of the conduct underlying the conviction). In *United States v. Persico,* 774 F.2d 30 (2d Cir.1985), the court affirmed a lower court ruling that the Double Jeopardy Clause did not preclude the defendants' trial on RICO charges based on predicate acts for which the defendants had previously been convicted. *Id.* at 32.

The court noted that the RICO indictment alleged that the substantive conduct and conspiracy continued for at least four years beyond the conduct underlying the indictments in the previous case. Moreover, the court did not criticize the lower court's conclusion that subsequent RICO charges can only survive double jeopardy objections if the subsequent indictment alleges conduct that post-dates the plea to the prior charges, or if evidence accumulated subsequent to that plea establishes either a second predicate offense or participation in a criminal enterprise. *Id.* Indeed, it noted only that "we need not and do not" decide the question. *Id.*

However, in *United States v. Russo,* 801 F.2d 624 (2d Cir.1986), the Second Circuit appears to have adopted the *Persico* district court's view. Citing its own *Persico* opinion, the court held that a RICO prosecution subsequent to and making use of predicate acts previously resolved by a plea agreement did not violate the Double Jeopardy Clause "because the second indictment [the RICO indictment] indicated that the sub-

court, it appears that he may be subsequently indicted for a RICO violation in federal court and that identical charge may be retried in federal court as one of the predicate acts necessary to prove the RICO violation. *See United States v. Licavoli,* 725 F.2d 1040, 1047 (6th Cir.), *cert. denied,* 467 U.S. 1252, 104 S.Ct. 3535, 82 L.Ed.2d 840 (1984); *U.S. v. Malatesta,* 583 F.2d 748, 757 (5th Cir.1978), *cert. denied,* 440 U.S. 962, 99 S.Ct. 1508, 59 L.Ed.2d 777 (1979); *United States v. Frumento,* 563 F.2d 1083, 1087–89 (3d Cir.1977), *cert. denied sub nom. Millhouse v. United States* and *Sills v. United States,* 434 U.S. 1072, 98 S.Ct. 1256, 1258, 55 L.Ed.2d 775, 776 (1978); *Von Bulow by Auersperg v. Von Bulow,* 634 F.Supp. 1284, 1310 (S.D.N.Y.1986); *but see U.S. v. Louie,* 625 F.Supp. 1327, 1336–37 (S.D.N.Y.1985), *appeal dismissed sub nom. United States v. Tom,* 787 F.2d 65 (2d Cir.1986).[14]

It does not follow, however, that there is no relationship whatsoever between litigation of a predicate act and a subsequent RICO prosecution. A substantive RICO prosecution requires, in a very practical sense, the full trial of each of the predicate acts alleged. Moreover, the judge must charge the jury as to the elements of each of the charges encompassed by the alleged predicate acts and the jury must be satisfied that each such essential element has been proved beyond a reasonable doubt

stantive conduct and the RICO conspiracy continued after the [earlier] plea ..." in which the predicate acts were dismissed. *Id.* at 626. The thrust of the *Persico–Russo* decisions is that, in order to be able to charge a RICO violation in addition to predicate acts, the RICO violation must extend beyond a prosecution for the predicate acts.

Here, the RICO enterprise ended when the six defendants were taken into custody in 1984 and 1985. Thus, the six defendants, in part, rest their motion for dismissal on a claim that, having been convicted of certain predicate acts with others having been dismissed and with no untried predicate acts following on these as to which a final disposition has been reached, the RICO count cannot stand independently. In view of the Second Circuit's decisions in *Persico* and *Russo,* this argument is not frivolous, but neither is it persuasive. Not only does it transform two decisions upholding the government's decision to indict separately and sequentially into a most significant restriction on govern-

before it may consider whether such a predicate act constitutes part of a pattern of racketeering. *See, e.g.,* U.S. Fifth Circuit District Judges Association, *Pattern Jury Instructions—Criminal Cases* (West Pub. Co. 1983). A substantive RICO charge demands far more proof than the proof of the overt act sufficient to carry a conspiracy prosecution. Indeed, it is this marked difference in proof that makes permissible separate counts for a substantive RICO violation and a RICO conspiracy. If a federal prosecution for commission of the predicate act results in an acquittal, double jeopardy concerns would be most seriously implicated were the identical predicate act to be presented to a second jury as indicative of the pattern of racketeering necessary to sustain a RICO prosecution. *See Ashe v. Swenson,* 397 U.S. 436, 445–46, 90 S.Ct. 1189, 1195, 25 L.Ed.2d 469 (1970) (defendant acquitted of robbing one member of a poker game could not be tried for robbing another member, where the only ground for acquittal had been insufficient evidence that he was one of the robbers).

The constitutional prohibition against "double jeopardy" was designed to protect an individual from being subjected to the hazards of trial and possible conviction more than once for an alleged offense. In his Commentaries, which greatly influenced the generation that adopted the Constitution, Blackstone recorded:

mental power to prosecute alleged RICO violations, it ignores the fact that the instant RICO indictment alleges the existence of a consistent pattern of racketeering activity which substantially antedates any subtantive charge acted on in the Eastern District of New York. Thus, even if this Court considered *Persico* and *Russo* persuasive in this Circuit, *but see United States v. Greenleaf,* 692 F.2d at 189, the factual distinctions present in the instant record render them inapposite.

**14.** These decisions all turn on the fact that, for Double Jeopardy purposes, a state is an entirely different sovereign from the federal government and each may prosecute violations of its laws. *See United States v. Wheeler,* 435 U.S. 313, 316–17, 98 S.Ct. 1079, 55 L.Ed.2d 303 (1978); *cf. Heath v. Alabama,* 474 U.S. 82, 88, 106 S.Ct. 433, 88 L.Ed.2d 387 (1985) (holding that under the dual sovereignty doctrine, successive prosecutions by two states for the same conduct are not barred by the double jeopardy clause).

... the plea of *auterfoits acquit,* or a former acquittal, is grounded on this universal maxim of the common law of England, that no man is to be brought into jeopardy of his life more than once for the same offence.

Substantially the same view was taken by this Court in *Ex parte Lange,* 18 Wall. 163, at 169:

The common law not only prohibited a second punishment for the same offence, but it went further and forbid a second trial for the same offence, whether the accused had suffered punishment or not, and whether in the former trial he had been acquitted or convicted.

The underlying idea, one that is deeply ingrained in at least the Anglo–American system of jurisprudence, is that the State with all its resources and power should not be allowed to make repeated attempts to convict an individual for an alleged offense, thereby subjecting him to embarrassment, expense and ordeal and compelling him to live in a continuing state of anxiety and insecurity, as well as enhancing the possibility that even though innocent he may be found guilty.

*Green v. United States,* 355 U.S. 184, 187–88, 78 S.Ct. 221, 223, 2 L.Ed.2d 199 (1957) (footnotes omitted).

The government here implicitly concedes as much in the framing of its indictment. Those of the defendants who have been acquitted of any of the predicate acts charged in this indictment are *not* charged with those predicate acts herein. The indictment lists as perpetrators of such predicate acts only those co-defendants who have been convicted thereof or as to which the earlier charges have concluded in a mistrial due to the jury's inability to reach a verdict, i.e., the "open counts."

If it is true that after a federal court acquittal of a particular crime the Double Jeopardy Clause forbids subsequent reprosecution in the guise of a predicate act of a larger RICO indictment, the narrow question here is whether, since the government has disabled itself from reprosecuting the open counts in the Eastern District of New York, can those same open counts—re-cast as predicate acts—be re-tried herein as elements of this larger RICO prosecution? *United States v. Stricklin,* 591 F.2d 1112 (5th Cir.), *cert. denied,* 444 U.S. 963, 100 S.Ct. 449, 62 L.Ed.2d 375 (1979) appears to counsel an affirmative answer since, just as the dismissal of the conspiracy charge there on Speedy Trial grounds was held not to implicate guilt or innocence, so here the doctrine of judicial estoppel is invoked to protect the integrity of the judicial process, not to improve the accuracy of the Court's truth seeking function. Even so, although the issue is a close one, the unique circumstances presented here [15] convince this Court that the government cannot retry the open counts as predicate acts of this larger RICO charge.[16]

The government is, therefore, judicially estopped from retrying, as to any of the six defendants particularly affected, any of the so-called "open counts" and their names shall be deleted in the copy of the indict-

**15.** Among these circumstances are the special requirements of full proof of the predicate acts as part of this RICO charge, the fact that the six defendants have once been placed in jeopardy and tried to juror deadlock on the open counts, the fact that the government has unequivocally promised to drop the open counts against these defendants, and the realization that, to allow the government to proceed as it wishes here, will render this a hollow promise indeed and result in the government's making an end run around the proper application of the doctrine of judicial estoppel.

**16.** The six defendants also assert that they have been prejudiced by the government's maneuvers herein. That is, they complain that, by denying them a speedy trial in the Eastern District of New York, proceedings could go forward here in Massachusetts which they perceive as a much less favorable forum. Though not overly happy with Judge Glasser when on trial before him in the Eastern District of New York, the six defendants now complain that they have been deprived of "the patience, scholarship, and judicial temperament of [that] outstanding jurist." *United States v. Levasseur,* 816 F.2d 37, 45 (2d Cir.1987). Moreover, in light of the juror deadlock as to the open counts in the Eastern District of New York, the six defendants now profess a strong preference for that cosmopolitan jury pool over the municipal, suburban, and rural pool of jurors from which the jury will be selected in Springfield, Massachusetts. Finally, the six defendants complain that they have been deprived of the services of lawyers intimately

ment sent to the jury from the particular predicate acts which constitute the so-called "open counts." [17]

familiar with the case since they have been forced to proceed to trial here in Massachusetts rather than face the open counts in New York supported by counsel in which they had high confidence. These same defendants, however, objected to the New York venue in their appeal to the Second Circuit, *see ibid.,* and they are thus now judicially estopped themselves from abruptly changing their position and claiming the Eastern District of New York as the preferred venue.

Perhaps more important, these claims of prejudice play no part in the analysis set forth above.

17. While the analysis presented in the text persuades the Court of the propriety of applying judicial estoppel in this conext, there is another, somewhat more narrow basis for its application here, viz., that the government has, indeed, played "fast and loose" with the courts.

This Court finds that, at the time the government sought to avoid the strictures of the Speedy Trial Act by offering to drop the "open counts" in the Eastern District of New York, it well knew that it was, in reality, giving up nothing because the Massachusetts RICO indictment alleged the same conduct as predicate acts to the RICO charge. The government failed to apprise Judge Glasser of this important fact, thus allowing him to conclude—contrary to the practical situation the government knew (indeed intended) would result—that the defendants would be spared the anguish and uncertainties of again confronting the same evidence and that significant judicial economies would accrue.

This conduct constitutes playing "fast and loose" with the courts and this Court concludes, as an alternative ground, that such conduct warrants the application of judicial estoppel here.